IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DONALD C. TILTON, D.O.          :
                               :
            Plaintiff,          :
                               :
    v.                          :    C.A. No.:
                               :
RADIATION ONCOLOGISTS, P.A.,    :
VIROON DONAVANIK, M.D.,         :
MICHAEL F. DZEDA, M.D.,         :
CHRISTOPHER KOPROWSKI, M.D.     :
ADAM RABEN, M.D., SUNJAY        :
SHAH, M.D., and MICHAEL D.      :
SORENSEN, M.D.                  :
                               :
            Defendants.         :

## COMPLAINT

Plaintiff, Donald C. Tilton, D.O., ("Plaintiff" or "Dr. Tilton"), by and through his undersigned counsel, brings this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001 *et seq.*, and the principles of federal common law arising from ERISA, to compel payment of the deferred compensation benefits due to him pursuant to his employment agreement and separate deferred compensation agreement he entered into with his former employer, Defendant Radiation Oncologists, P.A., ("ROPA"), including interest and attorneys' fees, or, in the alternative, under state law. Dr. Tilton further raises state law claims of civil conspiracy to breach the deferred compensation agreement and claims under the Delaware Wage Payment and Collection Act, 19 Del. C. §1101 *et seq.*

**PARTIES**

1.   Plaintiff Dr. Tilton is an adult individual who resides at 4008 Lakeview Drive, Wilmington, Delaware 19807.

2.   Defendant ROPA is a Delaware professional association with its principal place of business located at 4701 Ogletown-Stanton Road, Newark, Delaware 19713 and whose registered agent for service of process in the State of Delaware is Shanley & Associates, P.A., located at 800 Delaware Avenue, 7th Floor, Wilmington, Delaware 19801.

3.   Defendant Viroon Donavanik, M.D., ("Dr. Donavanik"), is an adult resident of the State of Delaware residing at 7 Shannon Place, Newark, Delaware 19711.

4.   Defendant Michael F. Dzeda, M.D., ("Dr. Dzeda"), is an adult resident of the Commonwealth of Pennsylvania residing at 1193 Stonegates Turn, Boothwyn, Pennsylvania 19061.

5.   Defendant Christopher Koprowski, M.D., ("Dr. Koprowski"), is an adult resident of the State of Delaware residing at 115 E. Wynleigh Court, Greenville, Delaware 19807.

6.   Defendant Adam Raben, M.D., ("Dr. Raben"), is an adult resident of the State of Delaware residing at 712 Bristol Road, Wilmington, Delaware 19803.

7.   Defendant Sunjay Shah, M.D., ("Dr. Shah"), is an adult resident of the State of Delaware residing at 298 Hockessin Circle, Hockessin Chase, Hockessin, Delaware 19707.

-2-

8.   Defendant Michael D. Sorensen, M.D., ("Dr. Sorensen"; collectively with the entities identified in allegations 2-7, the "Defendants" and without ROPA, the "Defendant Doctors"), is an adult resident of the State of Delaware residing at 15 Lynam Lookout Drive, Newark, Delaware 19702,

### JURISDICTION AND VENUE

9.   The claims set forth in this Complaint arise under 29 U.S.C. §1132(a)(1)(i) and (a)(3), under federal common law and the common law of the State of Delaware and the Delaware Wage Payment and Collection Act, 19 Del. C. §1101 *et seq.*   This Court has jurisdiction over the subject matter of this action pursuant to 29 U.S.C. §1331, and the principles of supplemental jurisdiction, 28 U.S.C. §1367.

10.   Venue is proper in this district under 28 U.S.C. §1191 and 29 U.S.C. §1132(e), as the deferred compensation plan is administered in Delaware, the breach of the plan took place in Delaware, and all but one (1) of the seven (7) listed Defendants to this action reside in Delaware.

### FACTUAL ALLEGATIONS

11.   Upon information and belief, the Defendant Doctors were all stockholders, officers and/or directors of ROPA at all relevant times pertinent to this litigation.

-3-

12.    ROPA was incorporated on November 29, 1976. Dr. Tilton was one of the original shareholders when ROPA was incorporated in 1976.

13.    ROPA was incorporated and organized for the purpose of providing professional medical services, including, but not limited to, the rendering of medical services in the field of radiation oncology.

14.    Dr. Tilton was employed as a radiation oncologist with ROPA from the time of its incorporation until his retirement on December 31, 2002, approximately 26 years.

15.    On or about July 7, 2000, ROPA and Dr. Tilton entered into a separate employment agreement entitled "Radiation Oncologists, P.A. Senior Radiologist's Employment Agreement", ("SREA"), whereby Dr. Tilton became a senior oncologist with ROPA for a one-year term effective January 1, 2000 with an annual renewal provision. See the "SREA" attached as Exhibit "A".

16.    Paragraph 5(c) and (d) of Dr. Tilton's SREA contained a deferred compensation provision to be paid from the date of Dr. Tilton's retirement or death.

17.    On or about February 8, 2001, Dr. Tilton and ROPA entered into an agreement amending his SREA, specifically the deferred compensation paragraphs were completely replaced. See the "Amended SREA", attached hereto as Exhibit "B". The amounts to be paid in

-4-

deferred compensation would be paid over a time period of four (4) years.

18.   On or about December 27, 2002, Dr. Tilton and ROPA entered into an agreement entitled "Deferred Compensation Agreement", (the "DCA"). See the DCA attached hereto as Exhibit "C".

19.   The DCA was entered into pursuant to the terms of Dr. Tilton's Amended SREA because Dr. Tilton properly provided written notice of his retirement one (1) year prior to December 31, 2002 pursuant to paragraph 5(c)(i) and thus, ROPA became obligated to pay deferred compensation to Dr. Tilton in the amount of $1,200,000.00.

20.   Upon Dr. Tilton's retirement as of December 31, 2002, ROPA began making payments to Dr. Tilton under the terms of the DCA and those portions of the Amended SREA, as had been expressly incorporated into the DCA.

21.   For two (2) years Dr. Tilton received bi-monthly payments of $12,500.00 on the 15th of each month and the last day of each month for a total of $600,000.00.

22.   ROPA owes Dr. Tilton another two (2) years of bi-monthly payments for the years 2005 and 2006 as expressly provided in the DCA and the Amended SREA.

23.  By letter dated January 13, 2005, Dr. Tilton received notice from ROPA that his deferred compensation payments were being terminated.  See the letter attached hereto as Exhibit "D".

24.  Upon information and belief, all  Defendant Doctors participated in the decision to terminate Dr. Tilton's payments due to him pursuant to the DCA and Amended SREA.

25.  ROPA, in a letter dated January 13, 2005, stated the following as the reason for terminating Dr. Tilton's DCA payments:

> "ROPA has determined, on the advice of counsel, that your participation in the amendment of the terms of the Deferred Compensation Plan to substantially increase benefits owed to you pursuant to the Deferred Compensation Plan in February 2001 constitutes a breach of your fiduciary duty to the Deferred Compensation Plan."

26.  ROPA did not provide any explanation as to what fiduciary duty Dr. Tilton owed the deferred compensation plan and, further, provided no explanation of how Dr. Tilton's alleged action was a breach of this alleged duty.

27.  On or about September 2001, at a corporate meeting of ROPA, Drs. Donavanik and Hulick presented the deferred compensation plan for senior radiation oncologists, that was adopted by all of the shareholders of ROPA.

28.  At the said corporate meeting of ROPA, Dr. Tilton requested that the corporate minutes of ROPA accurately reflect that Dr. Tilton did not have input into the creation of the adopted deferred compensation plan for the senior radiation oncologists.

-6-

29. Paragraph 5(e)(iii), as modified by the Amended SREA, created a limitation on ROPA's obligation to pay deferred compensation payments in a fiscal year, if the scheduled payment exceeded twenty-five percent (25%) of ROPA's gross receipts for such fiscal year.

30. Upon information and belief, ROPA's gross receipts for the previous fiscal year, calendar year 2004, were in excess of three million, five hundred thousand dollars ($3,500,000.00).

31. The deferred compensation payments by ROPA to Dr. Tilton were less than twenty-five percent (25%) of ROPA's gross receipts for the same period, calendar year 2004. Upon information and belief, ROPA's gross receipts for calendar year 2005 are projected to be in excess of three million five hundred thousand dollars ($3,500,000.00).

32. Dr. Tilton, through counsel, sent each of the Defendant Doctors a certified letter allowing the individual Defendant Doctors the opportunity to provide an affidavit stating he had no part in the decision to terminate Dr. Tilton's deferred compensation payments pursuant to the DCA and Amended SREA. See copies of the letters and certified receipts attached hereto as Exhibit "E".

33. None of the Defendant Doctors provided the requested affidavit or any other response, and, as such, upon information and

belief, all Defendant Doctors participated in the decision to terminate Dr. Tilton's deferred compensation payments.

34. Additionally, pursuant to the terms of his SREA, Dr. Tilton was to receive annual compensation in the amount of $400,000.00

35. If Dr. Tilton remained employed with ROPA, rather than retiring, during the same period of time he was to receive deferred compensation, January 1, 2003 through December 31, 2006, Dr. Tilton would have earned $1,600,000.00 in base compensation, and his total compensation would have been significantly higher as a result of customary bonuses, dividends and benefits paid out during this time frame.

36. Pursuant to the Amended SREA and the DCA, Dr. Tilton was to receive total deferred compensation in the amount of $1,200,000.00, payable at a rate of $300,000.00 per year. By retiring early and triggering his deferred compensation payments as permitted, ROPA was actually obligated to pay much less to Dr. Tilton than ROPA would have paid Dr. Tilton had he remained employed.

## COUNT I - BREACH OF CONTRACT

37. Plaintiff incorporates allegations 1 through 36 inclusive as though fully set forth herein.

-8-

38. ROPA knowingly, willingly and voluntarily entered into the obligations set forth in Dr. Tilton's SREA, Amended SREA and DCA.

39. For two (2) years, ROPA met its obligations pursuant to the terms of the SREA, Amended SREA and DCA by making bi-monthly payments to Dr. Tilton in the amount of $12,500.00 each.

40. Without justification and in bad faith, ROPA ceased making the contractually required deferred compensation payments as of January 15, 2005.

41. ROPA continues to fail to make any additional contractually required deferred compensation payments to Dr. Tilton, despite due demand, and ROPA is therefore in default of the terms of the Amended SREA and the DCA.

42. Dr. Tilton has, at all times, been in compliance with his obligations pursuant to his SREA, the Amended SREA and the DCA.

43. As a result of ROPA's breach of contract, Dr. Tilton has suffered the loss of his deferred compensation payments due to him since January 15, 2005.

## COUNT II - CLAIM UNDER ERISA
### FOR BENEFITS PURSUANT TO THE AMENDED SREA AND DCA

44. Plaintiff incorporates allegations 1 through 43 inclusive as though fully set forth herein.

45. By failing and refusing to provide the deferred compensation benefits to Dr. Tilton pursuant to the terms of the

-9-

Amended SREA and the DCA, ROPA violated the terms and provisions of the Amended SREA and the DCA, and violated ERISA.

46.    As a result of ROPA's breach of its obligations, Dr. Tilton suffered the loss and denial of the deferred compensation benefits due to him pursuant to the Amended SREA and the DCA.

47.    Pursuant to 29 U.S.C. §1132(a)(3) and (g), any judgment in favor of Dr. Tilton, and against ROPA, may include costs, interest and reasonable attorneys' fees.

### COUNT III - ANTICIPATORY REPUDIATION

48.    Plaintiff incorporates allegations 1 through 47 inclusive as though fully set forth herein.

49. ROPA is contractually bound by its obligations set forth in the Amended SREA and the DCA.

50. Despite ROPA's contractual obligations, it repudiated the Amended SREA and the DCA by its letter of January 13, 2005 by informing Dr. Tilton of ROPA's intention to cease to make the required deferred compensation payments.

51.    Despite due demand, ROPA has not retracted its repudiation of the Amended SREA and the DCA.

52.    As such, all payments owed pursuant to the terms of the Amended SREA and the DCA are presently due and owing under the doctrine of anticipatory repudiation.

## COUNT IV - VIOLATION OF WAGE PAYMENT AND COLLECTION ACT

53.    Plaintiff   incorporates   allegations   1   through   52 inclusive as though fully set forth herein.

54.    Dr. Tilton's bi-monthly deferred compensation payments fall within the statutory definition of wages contained in the Delaware Wage Payment and Collection Act, 19 Del.C. §1101, et seq. (the "Wage Act").

55.    ROPA has failed to make the regular bi-monthly deferred compensation payments beginning January 15, 2005 to the present.

56.    ROPA's failure to make the deferred compensation payments when due are clear violations of the Wage Act for each such payment.

57.    Pursuant to 19 Del. C. §1112, each violation of the Wage Act is subject to a penalty of no less than $1,000.00 and no more than $5,000.00.

58.    Further, pursuant to 19 Del. C. §1113, any judgment entered in favor of Dr. Tilton under the Wage Act shall include an award for costs and reasonable attorneys' fees.

## COUNT V - CIVIL CONSPIRACY

59.    Plaintiff   incorporates   allegations   1   through   58 inclusive as though fully set forth herein.

60.    The Defendant Doctors, in their individual capacities, have together engaged in a course of conduct that unlawfully

-11-

deprived Dr. Tilton of the benefits due to him pursuant to the Amended SREA and the DCA.

61.   The Defendant Doctors have used the pretext of an alleged fiduciary breach to the deferred compensation plan to aid and abet ROPA in reneging on its obligations to Dr. Tilton pursuant to the express language of the Amended SREA and the DCA.

62.   Dr. Tilton has been directly and proximately damaged by the Defendant Doctors' unlawful conduct in their individual capacities.

63.   The Defendant Doctors had no real reason to breach Dr. Tilton's Amended SREA and DCA.

64.   The Defendant Doctors' decision to have ROPA terminate the deferred compensation payments to Dr. Tilton was made in bad faith and caused a bad faith breach of contract and violation of ERISA by ROPA as alleged in Counts I and II.

65.   Dr. Tilton relied upon the terms of the Amended SREA and the DCA when making his decision to accept early retirement.

66.   Dr. Tilton is entitled to punitive damages for the bad faith conduct of the Defendant Doctors in causing a bad faith breach of contract and violation of ERISA by ROPA.

WHEREFORE, Plaintiff, Donald C. Tilton, D.O., respectfully requests that judgment be entered in his favor and against ROPA and the Defendant Doctors as follows:

(a)  damages in the amount of $600,000.00, consisting of the deferred compensation payments not made by ROPA and anticipatory repudiation damages in the amount of the remaining owed payments;

(b)  pre-judgment and post-judgment interest at the legal rate pursuant to 6 Del. C. §2301;

(c)  costs and reasonable attorneys' fees;

(d)  punitive damages;

(e)  such other and further relief that this Court deems just and equitable.

GORDON, FOURNARIS & MAMMARELLA, P.A.

Date: 4/27/05

Robert A. Penza, Esquire (DSB #2769)
Peter M. Sweeney, Esquire (DSB #3671)
1925 Lovering Avenue
Wilmington, DE   19806
(302) 652-2900
Attorneys for Plaintiff,
Donald C. Tilton, D.O.

-13-