# EXHIBIT

# A

# RADIATION ONCOLOGISTS, P.A.
## SENIOR RADIOLOGIST'S EMPLOYMENT AGREEMENT

THIS AGREEMENT is made and entered into on this _7th_ day of July, 2000, between DONALD C. TILTON, D.O., hereinafter referred to as "Employee," and RADIATION ONCOLOGISTS, P.A., a professional corporation organized under the laws of the State of Delaware, hereinafter referred to as the "Employer."

### WITNESSETH:

WHEREAS, Employer has been organized for the purpose of providing professional medical services, including but not limited to the rendering of medical services in the field of radiation oncology, and

WHEREAS, Employee is a physician duly licensed to practice in the specialty of radiation oncology (the "Specialty") by the State of Delaware and has received Board certification to practice the Specialty, and

WHEREAS, inasmuch as Employee has satisfactorily completed at least five (5) years of full-time employment with Employer, it is the desire of the parties to continue the employment of Employee by Employer as a "Senior Radiologist" under the terms and conditions as set forth in this Agreement, and Employee wishes to accept such employment.

NOW, THEREFORE, in consideration of the mutual promises, covenants and agreements contained herein and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties do hereby covenant and agree as follows:

(1)   <u>Employment</u>.  Employer hereby employs Employee and Employee accepts such employment as a physician to perform professional medical services in the Specialty during the term of this Agreement; and during the period of employment, Employee shall devote his utmost knowledge and best skills to the care of and rendering of professional medical services to such patients as shall be entrusted to him and shall perform such professional medical duties as may be assigned to him by Employer.  Employee agrees to work exclusively for and full-time in Employer's practice during the term of this Agreement and shall undertake on call coverage duties as directed by the Employer.

(2)   <u>Term</u>.  This Agreement shall be for a term of one (1) year, effective as of January 1, 2000 continuing until December 31, 2000, subject, however, to termination during the term hereof as provided in Paragraph 15.  This Agreement shall be renewed annually on the anniversary of the effective date of this Agreement unless either party provides the other with at least one hundred twenty



EXHIBIT

"A"

(120) days prior written notice of his or its, as the case may be, intention not to renew the Agreement. Employer shall not terminate or not renew this Agreement unless for "just cause," defined in Sections 15(b)(ii) through 15(b)(vii) herein.

(3) <u>Duties. Responsibilities, and Personal Conduct</u>. In addition to the duties set forth in paragraph (1) hereof, Employee shall have the following duties and obligations:

(a)  Employee is employed pursuant to the terms of this Agreement to practice medicine on behalf of Employer, and specifically to provide services in the Specialty. Employee agrees to devote substantially all of his gainful time and energies to such practice and pledges himself not to engage in any other gainful occupation during the term of this Agreement without the prior consent of Employer's Board of Directors; provided, however, that he shall not be prevented from personally, and for his own account, trading in stocks, bonds, securities, real estate, commodities or other forms of investments for his own benefit. Employee hereby pledges his active and industrious practice of his profession in the Employer's interest, his faithful adherence to the principles and ethical standards that any professional regulatory and/or advisory group or body, including, without limitation, the Principles of Medical Ethics of The American Medical Association, may from time to time establish with regard to or applicable to the practice of medicine and/or the Specialty by physicians licensed to so practice, and his careful avoidance of all personal acts, habits, and usages which might injure in any reasonable way, directly or indirectly, the professional or personal reputation of Employer or any physician employed by it, including himself. During the term hereof and any renewal, Employee shall not, without the written consent of Employer, (i) render professional services to or for any person, firm or corporation or other organization for compensation, or (ii) engage in any activity that competes with the interest of Employer whether Employee is acting by himself or as an officer, director, employee, shareholder, partner, fiduciary, or investor. Any consent granted to Employee shall be revocable by Employer at any time upon ten (10) days' notice only if such activities interfere with Employee's ability to perform services under this Agreement. Employee agrees to cease and desist such other activities upon receipt of such notice.

(b)  Except as may be otherwise agreed in writing by Employer, all income generated by Employee for professional services and related professional activities shall belong to the Employer regardless of to whom paid. Any checks made payable to Employee which represent income belonging to Employer under the terms of this Agreement shall be endorsed over by Employee to Employer. Employee hereby expressly agrees and covenants that the compensation and other benefits received by him and

expressly provided for under this Agreement shall satisfy and discharge in full all of his claims upon Employer for compensation in respect of his professional services, and Employee expressly acknowledges that his service in employment set forth in this Agreement in no way confers upon him any ownership interest in or professional claim upon any fees charged by Employer for his services, whether the same are collected during the employment or after the termination thereof, and Employee hereby disclaims and renounces any such interest or claim.

(4)    Authority and Control of Employer.  Subject to paragraph (3) above:

(a)  Employer shall direct and control the assignment of patients to Employee.  Employee agrees to perform duties in the Specialty such as are assigned to him by Employer.  Employee agrees that duties performed by him may subsequently be assigned to other employees.  The assignment of patients shall not be done in a way that is detrimental to the patients.  "On call" coverage shall be assigned among the employed physicians of the Employer, subject to such policies (including exemptions from "on call" duties) as are established by the Employer's Board of Directors.

(b)  Employee shall perform all professional medical services as are reasonably assigned to him by Employer, and all work performed by Employee shall be subject to the review and study of Employer.

(c)  The performance of professional services by Employee on behalf of Employer shall be performed at such time and at such places as shall be reasonably determined by Employer, and in accordance with such reasonable regulations or individual directions as Employer may establish or instruct. The duties of Employee shall be rendered on a seven (7) day a week basis with rotation for weekends off and days off coordinated by Employee with existing physician-employees of the Employer.

(5)    Total Compensation.

(a)  Employee's total compensation shall consist of the sum of FOUR HUNDRED THOUSAND DOLLARS ($400,000.00) per year, payable on a biweekly basis.  "Total Compensation" shall consist of such base salary and other benefits provided by the Employer on behalf of Employee (and/or his dependents), whether or not such benefits are currently taxable to Employee. Such determination shall be made by Employer's Board of Directors, in a consistent manner.  No additional compensation shall be due or paid for "on call" assignments and responsibilities.

(b)  In addition, Employee may be entitled to: (i) additional "bonus" compensation at the end of each fiscal year of the Employer, and/or (ii) additional compensation for serving in administrative, Departmental, and/or management capacities, as determined by and in the sole discretion of the Employer's Board of Directors.

(c)  Provided, however, that in the event that the Employee's employment shall terminate due to (i) death, (ii) total and permanent disability, or (iii) complete retirement from the practice of medicine after attaining age fifty-five (55) and completion of at least ten (10) years of service with the Employer, he shall be entitled to additional deferred compensation equal to the average annual Form W-2 compensation paid to such Employee by the Employer, calculated by averaging the three (3) calendar years preceding such death, total disability or retirement.  Deferred compensation hereunder shall be payable in equal monthly installments, without interest, for thirty-six (36)  months following the Employee's termination.  Such monthly installments shall commence not later than the first day of the first calendar month following the calendar month in which the Employee's employment so terminates.

(d)  Any payments of deferred compensation made under subparagraph (c) above shall be limited in the following respects,

(i)  If the Employee should engage in the practice of radiation oncology (including any related disciplines thereof) within New Castle County, Delaware and/or Cecil County, Maryland, his right to any further payments shall cease upon the date such competitive practice begins and shall not thereafter be due and payable in any event.

(ii)  The total of such deferred compensation payable to the Employee shall not in any fiscal year exceed Thirty Percent (30%) of the Employer's gross receipts for such fiscal year.  Any amounts paid or payable in excess of such limitation shall be applied in reduction of such deferred compensation payable for such fiscal year, and if an excess has already been paid it shall be applied against the succeeding fiscal year's payments as so calculated, provided, that the entire deferred compensation amount shall be paid in full by no later than sixty (60) months after the initial payment.

(iii)  If the Employee had received salary continuation due to illness or injury as set forth in the Agreement within twelve (12) months of the termination of his employment, the total amount of his deferred compensation shall be reduced by the total of any such salary continuation pay he had received.

4

(iv)    If the Employee should voluntarily terminate his employment hereunder without giving at least ten (10) months' advance written notice of his intention to do so, the total of his deferred compensation shall be reduced by one-tenth (1/10th) for each complete month less than ten (10) that he fails to provide such notice.

(v)    The Employee's deferred compensation shall be reduced by the amount, if any, of expenses and benefits paid by the Employer for the benefit of the Employee which relate to a period after the date of the termination of Employee's employment. Such expenses and benefits may include but not be limited to dues, subscriptions, and health insurance premiums, if applicable.

(6) <u>Health and Benefit Plans</u>. During the term of employment, Employee shall be entitled to health insurance coverage of the same type as is provided for the other physician-employees of the Employer. In addition, after completing the service eligibility requirement set forth in the qualified retirement Plan(s) of the Employer, if any, Employee shall also be entitled to participate in qualified retirement Plan(s) pursuant to the terms and provisions of such Plan(s) as are in effect and/or amended from time to time. Nothing herein shall require the Employer to make a contribution to such a qualified retirement Plan(s) or to continue to maintain the qualified retirement Plan(s).

(7) <u>Professional Activities</u>. Employer recognizes that Employee has a professional obligation to engage and take part, from time to time, in attendance at professional seminars, conventions and other related educational activities. During the term of this Agreement, and each year thereafter, Employee may use such number of days as are approved by the Employer's Board of Directors for such attendance with such time to be coordinated with the needs of Employer. Employer shall reimburse Employee for expenses related to attending such professional seminars, conventions, and other related educational activities up to limits as are determined by the Employer's Board of Directors, provided, however that such expenses are approved by Employer in advance.

(8) <u>Professional Liability Insurance</u>. Employer shall pay for and maintain, at its sole cost and expense, professional liability insurance (in an amount determined by the Employer's Board of Directors) with respect to Employee while in the employ of and in his capacity as an employee of the Employer. In the event the Employee's employment is terminated by Employer for any reason other than those specified below in Paragraph 15 (b)(ii) through 15 (b)(vii), then, and only in such event, the Employer shall pay for the extended reporting endorsement ("tail") for Employee's professional liability coverage as of the last day Employee performs services for the Employer. In all other cases, Employee shall be responsible for

obtaining, at his cost, the extended reporting endorsement ("tail") for Employee's professional liability coverage as of the last day Employee performs services for the Employer (and in the event Employee does not obtain such extended reporting endorsement, Employer may obtain such endorsement and reduce the amount of any other payments due to Employee by the cost of such extended reporting endorsement).

(9) <u>Vacation</u>. Employee shall be entitled to annual vacation days, subject to such limits and general resolutions as may be adopted from time to time by Employer's Board of Directors respecting the amount of, coordination, and approval of times for vacation.

(10) <u>Expenses</u>. During the period of his employment, Employee shall be reimbursed for his reasonable expenses for the benefit of Employer in accordance with the general policies of Employer as adopted by Employer's Board of Directors from time to time. Such expenses shall include membership dues and fees for the American Medical Association, the Medical Society of Delaware, and the New Castle County Medical Society, and may include, but shall not be limited to, professional license fees, dues and expenses of membership in professional societies related to the Specialty, medical books and professional journals, provided that reimbursement for such expenses shall not exceed such limits as are imposed by the Employer's Board of Directors. With respect to any expenses that are reimbursed by Employer to Employee, Employee agrees to account to Employer in detail sufficient to enable Employer to claim and substantiate an income tax deduction for such item, if such item is deductible. If, as a consequence of an audit of the income tax returns of Employer, any expenses paid for Employee, or any reimbursement for expenses made to Employee, shall be disallowed as income tax deductions, and if Employer does not contest such disallowance or if the disallowance becomes final and binding, Employee agrees to repay to Employer all amounts of disallowed expenses. Employee shall have the right, if he chooses, to attend any such audit of the Employer pertaining to such disallowed expenses. This provision for repayment shall not be waived by Employer.

(11) <u>Patient Files and Records</u>. All records contained in the files of or with respect to any patient shall be the sole property of Employer, and Employee shall not remove any such records upon termination of his employment with Employer; except that Employee shall be entitled to copy, at his own expense, patient records for which he has produced a signed patient authorization and release form. In no event shall Employee be permitted to take any records with respect to any patient for whom he did not perform professional medical services while an employee of Employer. The Employer shall fulfill its responsibilities to release copies of patient records directly to those patients who request their records, in writing. In such event, the Employer may charge a reasonable copying expense.

(12)  In the event this Agreement is not renewed or the employment of Employee is terminated by either the Employer or Employee during the term of this Agreement, Employee shall immediately leave the premises of the Employer and shall discontinue using the mailing address and telephone number of the Employer.

(13)  <u>Advice and Assistance</u>.  Employee hereby specifically undertakes to advise and assist on request, any other physician/employee of Employer in the rendering of professional medical services and Employer hereby specifically undertakes to make available to Employee the advice and assistance of all or any of its other physician-employees in the rendering of professional medical services.

(14)  <u>Prohibited Conduct</u>.  Employee hereby agrees that (i) he will not personally make, draw, accept or endorse any promissory note, bill or exchange, lease, contract or other engagement for the payment of money or its equivalent by Employer, nor pledge the credit of Employer in any way whatsoever except as he may be authorized by Employer's Board of Directors to do so, and (ii) any breach of this paragraph by him shall entitle Employer to recover from him any expense in which it may be involved as a result of such breach.

(15)  <u>Suspension and Termination</u>.  The Board of Directors of Employer may, in its discretion by unanimous vote, temporarily suspend Employee with pay and continued benefits, and relieve him of his duties to provide professional medical services for the period of time set by the Board of Directors when in the opinion of the Board of Directors the Employee shall have failed to provide or will likely fail to provide, either generally or in any specific instance, that degree of professional medical services which constitute acceptable medical practice.  Any temporary suspension shall be without prejudice to any termination that may otherwise occur under the provisions of this paragraph.

In addition to any other provisions for termination contained in this Agreement, this Agreement shall be terminated during the term or any renewal thereof as follows:

(a)  Upon the death of the Employee or upon the mutual agreement in writing of the parties hereto to terminate this Agreement; or

(b)  Automatically upon the happening of any one or more of the following events:

(i)  Upon the expiration of three hundred sixty (360) days of disability due to illness or accident [provided that, in the event Employee is mentally or physically disabled, such that he is unable to provide the full time services described in this Agreement, Employee shall be entitled to continue receiving his total compensation for a

period of up to sixty (60) days, and thereafter shall be entitled to receive fifty percent (50%) of his total compensation for up to and additional sixty (60) day period. If the disability continues for three hundred sixty (360) days, Employee shall be deemed "totally and permanently disabled" and Employee's employment shall terminate. The period of disability shall be deemed continuous unless a period of at least six (6) months shall elapse between the end of one period of disability and the commencement of another period of disability];

(ii) Upon the failure of Employee to cure any material breach by Employee of any terms or conditions hereof within fifteen (15) days of receiving written notice from the Employer of such breach;

(iii) Upon loss, suspension or withdrawal of Employee's license to dispense or prescribe narcotic drugs in the State of Delaware;

(iv) Upon the loss, suspension or withdrawal of Employee's license to practice medicine in the State of Delaware;

(v) Upon the loss, permanent suspension or withdrawal of Employee's admitting staff privileges to practice medicine at the Christiana Care Health System ("CCHS"), Union Hospital of Cecil County, Maryland, and/or any other hospital where the Employer's physicians attend and/or treat patients with radiation,

(vi) Upon Employee's being adjudged, whether preliminarily or finally, guilty of professional misconduct by any professional organization having jurisdiction, upon Employee's loss of right to participate in the Medicare and/or Medicaid programs; upon Employee's conviction of a crime of moral turpitude, upon Employee's abuse of any drug or alcoholic substance; and/or

(vii) Upon Employee's embezzlement of funds of Employer or diversion of monies paid or payable to Employer.

(16) Governing Law. This Agreement shall be governed by the laws of the State of Delaware and shall be construed, interpreted and enforced in accordance therewith.

(17) No Waiver. This Agreement shall not be modified or amended except by a further written document signed by the Employee and Employer. No provision herein may be waived except by an agreement in writing signed by the waiving party. A waiver of any term or provision shall not be construed as a waiver of any other term or provision.

8

(18)  <u>Benefit</u>.  This Agreement shall bind Employee and shall bind and benefit Employer and its successors and assigns.  This Agreement shall not be assignable by Employee.

(19)  <u>Notice</u>.  Any notice required or permitted to be given under this Agreement shall be sufficient if it is in writing and is (i) hand delivered personally to Employee or to an officer of Employer, or (ii) mailed by registered mail, return receipt requested, first-class postage prepaid, to the residence in the case of Employee or to its principal office in the case of Employer.  If mailed in accordance with this paragraph 19, notice shall be deemed given when deposited in the U.S. Mails.

(20)  <u>Gender</u>.  References to the male gender shall include the female gender.

(21)  <u>Financial damages Provision</u>.  The parties further agree that, although there will be no restrictive covenant prohibiting Employee from engaging in a competitive medical practice upon termination of his employment with the Employer, the Employer has and will spend significant amounts in order to establish Employee's practice within the community, to introduce Employee to Employer's patients and referral sources, and to enhance Employee's professional reputation within the community.  The parties agree that if the Employee directly or indirectly engages in the practice of medicine, or owns, manages, operates, controls, is employed by or is connected in any manner with the ownership, management, operation or control of any profession, trade or business, engaging in the provision of radiation oncology services, the practice of medicine or rendering health care, directly or indirectly, including, without limitation, any hospital, nursing home, clinic, health or health-related facility, health maintenance organization, or mobile health or health-related unit; or solicits, treats, diagnoses or consults with any patients or former patients of Employer, or uses any efforts to persuade or induce any patients of Employer to leave Employer for treatment, diagnosis or consultation with or by anyone not associated with Employer, within a twenty-five (25) mile radius of any of the Employer's office locations at any time during the twelve (12) calendar months following his termination of employment with the Employer, the Employer would be significantly damaged financially.  In such event, Employee agrees that he will (i) pay to the Employer an amount equal to his previous calendar year's W-2 compensation from the Employer, and (ii) will forfeit all entitlement to "deferred compensation" under this Agreement as liquidated damages and to compensate Employer for its financial damages in such event.  Employee agrees that such financial damages are reasonable given the damages that Employer would suffer in such event.

Anything to the contrary notwithstanding, nothing in this provision shall be deemed to restrict Employee's right to engage in the practice of medicine outside of

the twenty-five (25) mile radius of any of Employer's office locations following the expiration or termination of Employee's employment.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals on the day and year first above mentioned.

EMPLOYEE:                                    EMPLOYER:
                                             RADIATION ONCOLOGISTS, P.A.


_____    By: _____
Donald C. Tilton, D.O.                              President


_____    Attest: _____
Witness                                                 Secretary


                                             [Corporate Seal]

10

# EXHIBIT

# B

AMENDMENT TO
RADIATION ONCOLOGISTS, P.A.
SENIOR RADIOLOGIST'S EMPLOYMENT AGREEMENT

THIS AMENDMENT to the Senior Radiologist's Employment Agreement entered into by and between DONALD C. TILTON, D.O. (hereinafter referred to as "Employee") and RADIATION ONCOLOGISTS, P.A., a Delaware professional corporation (hereinafter referred to as "Employer") is made this 8th day of February, 2001.

WITNESSETH:

WHEREAS, Employer and Employee desire to amend in certain respects the Senior Radiologist's Employment Agreement ("Agreement") entered into by the parties hereto.

NOW, THEREFORE, in consideration of the mutual exchange of promises contained herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

1. Paragraphs 5(c) and (d) of the Agreement shall be deleted in their entirety and replaced with the following new Paragraphs 5(c), (d), and (e):

"(c) provided, however, that in the event the Employee's employment shall terminate due to (i) death, (ii) total and permanent disability, or (iii) complete retirement from the practice of medicine after attaining age fifty-five (55) and completion of at least ten (10) years of service with the Employer, he shall be entitled to "Deferred Compensation" calculated as follows:

(i) In the event Employee dies, is totally and permanently disabled, and/or delivers written notice of his complete retirement from medicine on or before December 31, 2002, he shall be entitled to Deferred Compensation in the amount of $1,200,000, payable as provided in Subparagraphs (d) and (e) below.

(ii) In the event Employee dies, is totally and permanently disabled, and/or delivers written notice of his complete retirement from medicine after December 31, 2002, his Deferred Compensation shall be calculated as follows:



EXHIBIT

"B"

(A) <u>Age 55 to 65</u>. If Employee's age as of the date of death, disability or giving written notice of his complete retirement from the practice of medicine shall be between fifty-five (55) to sixty-five (65), then his Deferred Compensation shall be equal to the annual average of the three (3) previous years' "Total Compensation Package" for Senior Radiologists multiplied by two (2).

(B) <u>Age 66</u>. If Employee's age as of the date of death, disability or giving written notice of his complete retirement from the practice of medicine shall be sixty-six (66), then his Deferred Compensation shall be equal to the annual average of the three (3) previous years' "Total Compensation Package" for Senior Radiologists multiplied by one and one-half (1 ½).

(C) <u>Age 67</u>. If Employee's age as of the date of death, disability or giving written notice of his complete retirement from the practice of medicine shall be sixty-seven (67), then his Deferred Compensation shall be equal to the annual average of the three (3) previous years' "Total Compensation Package" for Senior Radiologists multiplied by one and one-quarter (1 ¼).

(D) <u>Age 68</u>. If Employee's age as of the date of death, disability or giving written notice of his complete retirement from the practice of medicine shall be sixty-eight (68), then his Deferred Compensation shall be equal to the annual average of the three (3) previous years' "Total Compensation Package" for Senior Radiologists multiplied by one (1).

(E) <u>Age 69</u>. If Employee's age as of the date of death, disability or giving written notice of his complete retirement from the practice of medicine shall be sixty-nine (69), then his Deferred Compensation shall be equal to the annual average of the three (3) previous years' "Total Compensation Package" for Senior Radiologists multiplied by one-half (1/2).

(F) <u>Age 70</u>. If Employee's age as of the date of death, disability or giving written notice of his complete retirement from the practice of medicine shall be seventy (70), then his Deferred Compensation shall be equal to the annual average of the three (3) previous years' "Total Compensation Package" for Senior Radiologists multiplied by one-quarter (1/4).

(G) <u>Age 71 or Older</u>. If Employee's age as of the date of death, disability or giving written notice of his complete

retirement from the practice of medicine shall be seventy-one (71) or older, then no Deferred Compensation shall payable.

(d)  Deferred Compensation hereunder shall be payable in equal monthly installments, without interest, for forty-eight (48) months following the Employee's death, disability or permanent retirement from the practice of medicine.  Such monthly installments shall commence not later than the first day of the first calendar month following the calendar month in which the Employee's employment so terminates.



(e)  Any payments of Deferred Compensation determined under Subparagraph (c) above shall be limited in the following respects:

(i)  If the Employee should engage in the practice of radiation oncology (including any related disciplines thereof) within New Castle County, Delaware and/or Cecil County, Maryland, his right to any further payments of Deferred Compensation shall cease upon the date such competitive practice begins and shall not thereafter be due and payable in any event.

(ii)  Notwithstanding anything in this Agreement to the contrary, the amount of Deferred Compensation payable pursuant to Subparagraph (c) above shall not, for any one Senior Radiologist, exceed $1,200,000.  On or after January 1, 2004, such $1,200,000 limitation shall be increased for changes in the cost of living (CPI-U as published by the U.S. Department of Labor for the Philadelphia region), calculated on a "base year" ending December 31, 2003.

(iii)  The total of such Deferred Compensation payable, in the aggregate, to or on behalf of Senior Radiologists shall not in any fiscal year exceed twenty-five percent (25%) of the Employer's gross receipts for such fiscal year.  Any amounts paid or payable in excess of such limitation shall be deferred (on a pro-rata basis) until the following fiscal year (or years), but shall also accrue interest at the prime interest rate until the eventual payment of such amounts.

(iv)  If the Employee had received salary continuation due to illness or injury as set forth in the Agreement within twelve (12) months of his death, total disability, or other termination of his employment, the total amount of his Deferred Compensation shall be reduced by the total of any such salary continuation pay he had received.

(v)  Any Employee desiring to permanently retire under these provisions shall give the Employer at least twelve (12) months' advance written notice of his intention to so retire.  If the Employee should voluntarily terminate (except in the event of death or total disability) his employment hereunder without giving at least twelve (12) months' advance written notice of his intention to do so, he shall not be entitled to any Deferred Compensation.

(vi)  The Employee's Deferred Compensation shall be reduced by the amount, if any, of expenses and benefits paid by the Employer for the benefit of the Employee which relate to a period after the date of the termination of Employee's employment.  Such expenses and benefits may include, but not be limited to, dues, subscriptions, and health insurance premiums, if applicable."

2.  All other terms and conditions of the aforementioned Agreement, together with any amendments thereto, shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals on the day and year first above written.

EMPLOYEE:

_____          _____(SEAL)
Witness                          DONALD C. TILTON, D.O.

                                 EMPLOYER:
                                 RADIATION ONCOLOIGSTS, P.A.,
                                 a Delaware professional association


                                 By: _____
                                              President
                                 Attest: _____
                                              Secretary


                                 [Corporate Seal]

-4-

# EXHIBIT

# C

## DEFERRED COMPENSATION AGREEMENT

This Agreement is made this 2 7ᵗʰ day of December, 2002, to be effective as of December 31, 2002, by and between RADIATION ONCOLOGISTS, P.A., a Delaware professional corporation (hereinafter referred to as the "Corporation") and DONALD C. TILTON, D.O., of New Castle County, Delaware (hereinafter referred to as "Employee").

WHEREAS, the Corporation has employed the Employee and the Employee has served the Corporation as a physician, an officer and director of the Corporation, and in such other capacities as the Board of Directors of the Corporation has from time to time designated; and

WHEREAS, in consideration of and to reward the Employee's past clinical, executive and administrative services rendered on behalf of the Corporation, the Corporation has agreed (under the terms of Employee's Employment Agreement dated July 7, 2000, as amended on February 8, 2001) to provide a deferred compensation benefit to the Employee upon his retirement;

NOW, THEREFORE, in consideration of the mutual promises, covenants, conditions and agreements, the parties hereto, intending to be legally bound hereby, agree as follows:

1. <u>DEFERRED COMPENSATION OBLIGATION</u>:  The Corporation agrees to pay Employee, as deferred compensation, the sum of ONE MILLION TWO HUNDRED THOUSAND DOLLARS ($1,200,000), payable without interest in ninety-six (96) bi-monthly installments of TWELVE THOUSAND FIVE HUNDRED DOLLARS ($12,500), with the first payment due as of January 15, 2003 and continuing on the last day and the 15ᵗʰ day of each month thereafter for four (4) years until December 31, 2006.  This obligation to pay deferred compensation shall continue in the event of Employee's death, and in such case the payments shall be made to the beneficiary designated by Employee in a writing filed by the Employee with the Corporation.

2. <u>LIMITATIONS ON CORPORATION'S OBLIGATIONS</u>:  The Corporation's obligations to pay Deferred Compensation (and the Employee's entitlement to receive Deferred Compensation) shall be limited and subject to adjustments provided in Employee's agreements as contained in his Employment Agreement dated July 7, 2000 as amended on February 8, 2001 (copies of which are attached hereto as Exhibits "A" and "B," respectively).  In particular, (a) pursuant to Paragraph 5(e)(i) of his Employment Agreement, as amended, if the Employee should engage in the practice of radiation oncology (including any related disciplines thereof) within New Castle County, Delaware and/or Cecil County, Maryland, his right to any further

1

payments of Deferred Compensation shall cease upon the date such competitive practice begins and shall not thereafter be due and payable in any event, and (b) pursuant to Paragraph 21 of Employee's Employment Agreement, he is subject to certain "financial damages provisions" in the event he engages in certain activities within a twenty-five (25) mile radius of any of Employer's office locations at any time within twelve (12) months following his termination of employment with Employer. All restrictions, forfeiture provisions, and financial damages provisions contained in Employee's Employment Agreement, as amended, shall continue in full force and effect. Notwithstanding these provisions, Employee shall be permitted to work on a part-time basis for Corporation after January 1, 2003, upon such terms as the parties may agree in writing, and shall be permitted to work anywhere in Sussex County, Delaware, and in such events Employee shall not be deemed to be engaging in any competitive practices. Prior to termination of deferred compensation payments by Employer to Employee and prior to invocation of the financial damages provision by Employer against Employee, Employer shall give Employee fifteen (15) days prior written notice of the prohibited conduct. In the event Employee does not permanently cease such prohibited conduct within fifteen (15) days of receiving such notice, Employer may exercise any and all of its rights under this Agreement.

3. <u>GENERAL CREDITOR</u>: The Employee shall be regarded as a general creditor of the Corporation with respect to any rights derived by the Employee from the existence of this Agreement.

4. <u>ASSETS</u>: Title to and beneficial ownership of any assets, whether cash, investments, or other assets which the Corporation may earmark to pay the contingent deferred compensation hereunder, shall at all times remain in the Corporation. The Employee and any beneficiary of the Employee shall not have any property interest whatsoever in any specific assets of the Corporation, except as stated herein.

5. <u>DEATH</u>: In the event the Employee should die before all of his deferred compensation benefits are paid to the Employee, the Corporation shall pay the unpaid balance to the Employee's designated beneficiary or beneficiaries as provided in Paragraph 1 above. The Employee shall designate his beneficiary or beneficiaries on the Beneficiary Designation Form attached to this Agreement as Exhibit "C."

6. <u>BINDING EFFECT</u>: This Agreement shall be binding upon the parties hereto and their respective heirs, personal representatives, executors, administrators, successors and assigns. Notwithstanding the foregoing sentence, the right to receive deferred compensation benefits hereunder is expressly declared

to be personal, non-assignable and non-transferable, except by a properly executed beneficiary designation accepted by the Corporation, will or intestacy, with preference given to the foregoing order.

7. <u>ENTIRE WRITING</u>: This writing contains the entire agreement of the parties with respect to the subject herein discussed and no covenant, promise, undertaking or representation concerning or relating to such subject not contained herein shall bind any party hereto unless it is in writing and executed with the same formality as this Agreement.

8. <u>WAIVER</u>:  Failure to insist upon strict compliance with respect to any of the terms, covenants, or conditions hereof shall not be deemed a waiver of such term, covenant or conditions nor shall any waiver or relinquishment of such right or power hereunder at any time or times be deemed a waiver or relinquishment of such right or power at any other time or times.

9. <u>INVALIDITY</u>:  The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provision.

10. <u>APPLICABLE LAW</u>:  This Agreement is a Delaware contract and shall be interpreted under the laws of the State of Delaware.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first above written.


_____          _____ (SEAL)
Witness                                                        Donald C. Tilton, D.O.


                                                               RADIATION ONCOLOGISTS, P.A.,
                                                               a Delaware professional corporation


                                                               By: _____
                                                                                  President

                                                               Attest: _____
                                                                                   Secretary


                                                               [corporate seal]


3

# BENEFICIARY DESIGNATION FORM
## RADIATION ONCOLOGISTS, P.A.
## <u>NONQUALIFIED DEFERRED COMPENSATION AGREEMENT</u>

I hereby designate as Primary Beneficiary and Contingent Beneficiary under the Agreement the following:

Primary Beneficiary: _____Angela Steele — Tilton_____

Contingent Beneficiary: _____Donald C. Tilton Trust_____

Any and all previous Beneficiary Designations made by me are revoked and in the event of my death, any benefits due to be paid to me by the Employer shall be paid to the above-designated Beneficiary(ies) in accordance with the terms of the Nonqualified Deferred Compensation Agreement.

I acknowledge that this Beneficiary Designation Form will not be effective until acknowledged in writing by the Employer in the space provided below.

PARTICIPANT:

_____            _____ (SEAL)
Witness                                                    Donald C. Tilton, D.O.

Beneficiary Designation Form
herein acknowledged and approved
this _31st_ day of December, 2002.

EMPLOYER:
RADIATION ONCOLOGISTS, P.A

By: _____
              President

4

# EXHIBIT

# D

# ROPA

Radiation Oncologists, PA
Post Office Box 4460
Wilmington, DE 19807

| HELEN F. GRAHAM CANCER CENTER CHRISTIANA CAMPUS 4701 OGLETOWN-STANTON RD NEWARK, DE 19713 (302) 623-4900 (302) 623-4850 FAX | CHRISTIANA HOSPITAL 4755 OGLETOWN-STANTON RD PO BOX 6001 NEWARK, DE 19718-6001 (302) 733-1830 | NORTH WILMINGTON SILVERSIDE-CARR CORP. CTR. 405 SILVERSIDE ROAD WILMINGTON, DE 19809 (302) 793-4160 (302) 793-3735 FAX | UNION HOSPITAL CANCER CENTER 111 WEST HIGH STREET ELKTON, MD 21921 (410) 398-4921 (410) 398-4835 FAX |

January 13, 2005

BY CERTIFIED MAIL – RETURN RECEIPT REQUESTED
BY REGULAR MAIL

Donald C. Tilton, D.O.
4008 Lakeview Drive
Wilmington, DE 19807

Re:    **Deferred Compensation from
       Radiation Oncologists, P.A.**

Dear Dr. Tilton:

This is to inform you that, effective immediately, Radiation Oncologists, P.A. (hereinafter "ROPA") is terminating all further payments to you pursuant to (i) Paragraphs 5(c), (d) and (e) of your Senior Radiologist's Employment Agreement with ROPA dated July 7, 2000 and amended as of February 8, 2001; and (ii) your Deferred Compensation Agreement dated December 27, 2002 with ROPA (hereinafter Paragraphs 5(c), (d) and (e) of your Senior Radiologist's Employment Agreement as amended and the Deferred Compensation Agreement shall be collectively referred to as the "Deferred Compensation Plan"). Furthermore, ROPA demands that you return immediately all amounts previously paid to you by ROPA pursuant to the Deferred Compensation Plan.

The Deferred Compensation Plan constitutes an employee pension benefit plan subject to the enforcement provisions of the Employee Retirement Income Security Act of 1974. ROPA has determined, on the advice of counsel, that your participation in the amendment of the terms of the Deferred Compensation Plan to substantially increase benefits owed to you pursuant to the Deferred Compensation Plan in February 2001 constitutes a breach of your fiduciary duty to the Deferred Compensation Plan. Therefore, in accordance with applicable authority, ROPA has determined that your benefits under the Deferred Compensation Plan should be forfeited.

Please return all amounts previously paid to you pursuant to the Deferred Compensation Plan to avoid further action by ROPA to recover these amounts.

| Michael F. Dzeda, MD    President | Sunjay A. Shah, MD    Secretary | Viroon Donavanik, MD    Treasurer |
| Christopher D. Koprowski, MD | Michael D. Sorensen, MD | Adam Raben, MD |

Donald C. Tilton, D.O.
January 13, 2005
Page 2

       Please be advised that you have the right to request further consideration of this determination by filing a request for a hearing. Such request, together with a written statement of the reasons why you believe this determination is incorrect must be filed with ROPA no later than sixty (60) days from your receipt of this letter. ROPA shall then conduct a hearing within the next sixty (60) days at which you may be represented by an attorney or other representative and shall have the opportunity to submit written and oral evidence and arguments in support of your position. At the hearing (or prior thereto upon five (5) business days written notice to the ROPA), you shall have an opportunity to review all documents in ROPA's possession which are pertinent to your claim for benefits under the Deferred Compensation Plan. A final decision as to your claim for benefits under the Deferred Compensation Plan shall be made by ROPA within sixty (60) days of the receipt of your appeal. Such final decision shall be a written decision and shall include the specific reasons for the decision.

                    RADIATION ONCOLOGISTS, P.A.

                    By: _____

                    Name: Michael Dzeda, M.D.
                    Title: President

cc:    Thomas R. Pulsifer, Esquire