IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DONALD C. TILTON, D.O.,                     :
                                            :
          Plaintiff,                        :
                                            :
     v.                                     :       Civil Action No. 05-00251 (SLR)
                                            :
RADIATION ONCOLOGISTS, P.A.,                :
VIROON DONAVANIK, M.D.,                     :
MICHAEL F. DZEDA, M.D.,                     :
CHRISTOPHER KOPROWSKI, M.D.,                :
ADAM RABEN, M.D., SUNJAY                    :
SHAH, M.D., AND MICHAEL D.                  :
SORENSEN, M.D.,                             :
                                            :
          Defendants.                       :

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

MORRIS, NICHOLS, ARSHT & TUNNELL
William H. Sudell, Jr. (No. 463)
Curtis S. Miller (No. 4583)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

Counsel for Defendants Radiation Oncologists,
P.A., Viroon Donavanik, M.D., Michael F.
Dzeda, M.D., Christopher Koprowski, M.D.,
Adam Raben, M.D., Sunjay Shah, M.D., and
Michael D. Sorensen, M.D.

June 3, 2005

Wilmington, Delaware

## Table of Contents

Page

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF ASSUMED FACTS .................................................................................... 1

    A.    General Background ................................................................................................2

    B.    Description of the Terms of Plaintiff's Deferred Compensation Benefits ........3

    C.    Payments Under the Deferred Benefit Plan ......................................................4

    D.    The Counts of the Complaint..............................................................................5

STANDARD OF REVIEW ...................................................................................................... 6

BASIS FOR RELIEF REQUESTED ...................................................................................... 7

  I.    Plaintiff's State Law Claims Are Preempted By ERISA ........................................ 7

    A.    All of the Counts in the Complaint Relate to an ERISA Employee
Benefit Plan..........................................................................................................7

    B.    Plaintiff's State Law Claims are Preempted by ERISA...................................10

      1.    Counts I and III – Breach of Contract and Anticipatory Repudiation .......... 12

      2.    Count IV – State Wage and Collection Act Claim ....................................... 14

      3.    Count V – Civil Conspiracy......................................................................... 15

  II.    Count II Should be Dismissed because Plaintiff has Failed to Exhaust his
Administrative Remedies as Required by ERISA ....................................................... 18

CONCLUSION........................................................................................................................ 20

Harrow v. Prudential Ins. Co. of Am.,
    279 F.3d 244 (3d Cir. 2002)........................................................................ 19

Huss v. Green Spring Health Servs., Inc.,
    18 F. Supp. 2d 400 (D. Del. 1998)............................................................. 17

Jones v. Baskin Flaherty Elliot & Mannino, P.C.,
    788 F. Supp. 878 (W.D. Pa. 1992)............................................................. 15

Kilkenny v. Long,
    288 F.3d 116 (3d Cir. 2002)....................................................................... 19

Langford v. City of Atlantic City,
    235 F.3d 845 (3d Cir. 2000)......................................................................... 7

Metropolitan Life Ins. Co. v. Massachusetts,
    471 U.S. 724 (1985)............................................................................ 11, 15

Modzelewski v. Resolution Trust Corp.,
    14 F.3d 1374 (9th Cir. 1994) ..................................................................... 8, 9

Morse v. Lower Merion Sch. Dist.,
    132 F.3d 902 (3d Cir. 1997)......................................................................... 6

Nester v. Allegiance Healthcare Corp.,
    162 F. Supp. 2d 901 (S.D. Ohio 2001) aff'd, 315 F.3d 610 (6th Cir. 2003) ................ 13

Pane v. RCA Corp.,
    667 F. Supp. 168 (D.N.J. 1987) ................................................... 7, 10, 13, 17

Papasan v. Allain
    478 U.S. 265 (1986).................................................................................... 2

Pilot Life Ins. Co. v. Dedeaux,
    481 U.S. 41 (1987)..................................................................................... 11

Pugh v. Metro. Life Ins. Co.,
    968 F. Supp. 178 (D. Del. 1997)............................................... 10, 11, 14, 15

Shaw v. Delta Air Lines, Inc.,
    463 U.S. 85 (1983)..................................................................................... 10

Smith v. Hartford Ins. Group,
    6 F.3d 131 (3d Cir. 1993)............................................................................. 9

Springer v. Wal-Mart Assocs.' Group Health Plan,
908 F.2d 897 (11th Cir. 1990) ................................................................... 20

Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,
140 F.3d 478 (3d Cir. 1998)....................................................................... 6

Vaughn v. Metropolitan Life Ins. Co.,
87 F. Supp. 2d 421 (E.D. Pa. 2000) ......................................................... 18

Way v. Ohio Cas. Ins. Co.,
346 F. Supp. 2d 711 (D.N.J. 2004) ............................................... 7, 11, 13

Weldon v. Kraft, Inc.,
896 F.2d 793 (3d Cir. 1990)...................................................................... 20

Williams v. White,
927 F.2d 1540 (11th Cir. 1991) ................................................................ 8

Young v. Reconstructive Orthopedic Assocs., II, P.C.,
No. Civ. A. 03-2034, 2005 WL 627796 (E.D. Pa. March 16, 2005) ...... 11, 13

**Other Authorities**

120 Cong. Rec. 29933 (1974) ................................................................... 10

19 Del. C. § 1101 ....................................................................................... 6

28 U.S.C. § 1002........................................................................................ 7, 10

29 U.S.C. § 1001 ....................................................................................... 4

29 U.S.C. § 1002........................................................................................ 9

29 U.S.C. § 1144........................................................................................ 11

ERISA Practice & Procedure § 2:14 (Rev. 2005)..................................... 13

Federal Practice & Procedure § 1357 ...................................................... 7

PRELIMINARY STATEMENT

The Court should dismiss Counts I, III, IV, and V, and all of the Defendant Doctors (as defined below) because ERISA (as defined below) preempts Plaintiff's state law claims. Plaintiff's state law claims are all predicated on his alleged entitlement to benefits from an employee benefit plan subject to ERISA. ERISA preempts all claims that relate to such plans whether directly or indirectly. Here, Plaintiff has alleged that the same core facts that underlie his claim for recovery under ERISA also underlie his state law claims. Thus, Plaintiff has conceded that all of his claims relate to an employee benefit plan subject to ERISA, and, consequently, are preempted by ERISA.

The Court should also dismiss Count II of the Complaint because Plaintiff has failed to exhaust his administrative remedies under the Deferred Benefit Plan (as defined below). Federal courts generally require a participant in an employee benefit plan subject to ERISA to exhaust the administrative remedies available to the participant prior to filing suit in order to promote the sound policy reasons for requiring such administrative review. Despite being apprised of his right to a full and fair administrative review, Plaintiff ignored such notice and filed suit shortly thereafter. Accordingly, the Court should dismiss Count II of the Complaint and require that the Plaintiff pursue the administrative procedures afforded to him.

STATEMENT OF ASSUMED FACTS

For the purposes of this Motion only, the Defendants will assume any well-pleaded facts of the Complaint, but only such facts. The Defendants will not assume the truth of allegations clearly derived from a source document that contradicts those allegations, nor will the Defendants' assume as true conclusory statements or legal

-1-

conclusions disguised as factual allegations.  See Papasan v. Allain, 478 U.S. 265, 286 (1986).

A.    General Background

The Plaintiff is a former shareholder and employee of Defendant Radiation Oncologists, P.A. ("ROPA").  Complaint at ¶ 14.  ROPA is a professional medical association that provides, inter alia, services in the field of radiation oncology. Complaint at ¶ 13.  Plaintiff was employed as a radiation oncologist with ROPA at all times between the date of its incorporation, on November 29, 1976, until December 31, 2002, when he retired.  Complaint at ¶ 14.  Defendants Viroon Donavanik, M.D., Michael F. Dzeda, M.D., Christopher Koprowski, M.D., Adam Raben, M.D., Sunjay Shah, M.D., and Michael D. Sorensen, M.D. (collectively, the "Defendant Doctors"), are present employees of ROPA.  Complaint at ¶ 11.

On or about July 7, 2000, ROPA and Plaintiff entered into the Radiation Oncologists, P.A. Senior Radiologist's Employment Agreement ("SREA").  Complaint at ¶ 15. The SREA governed, among other things, the terms of Plaintiff's employment with ROPA, including Plaintiff's duties, responsibilities, personal conduct, Plaintiff's compensation, health and benefit plans, the provision of medical liability insurance, rules governing patient files and records, and the deferred compensation Plaintiff would receive upon retirement, death, or total disability.  A copy of the SREA is attached to the appendix filed contemporaneously herewith (the "Appendix") as Exhibit A.[1]  Prior to

---

[1]    All of the Exhibits referenced herein, with the exception of the unreported cases cited, are attached as Exhibits to the Complaint.  The Exhibits have been attached to the Appendix for the Court's convenience.

Plaintiff's retirement on December 31, 2002, the deferred compensation provisions of SREA were modified by two separate agreements, the Amendment to Radiation Oncologists, P.A. Senior Radiologist's Employment Agreement, dated February 8, 2001, and the Deferred Compensation Agreement, dated December 27, 2002. Complaint at ¶¶ 17-19.

B. Description of the Terms of Plaintiff's Deferred Compensation Benefits

Paragraphs 5(c) and (d) of the SREA contain a deferred compensation provision that entitles Plaintiff, or Plaintiff's heirs, to receive deferred compensation upon Plaintiff's retirement, death, or total and permanent disability. See Exhibit A. Under the terms of the SREA, subject to the satisfaction of various terms and conditions, Plaintiff was entitled to receive deferred compensation in an amount equal to the average reported compensation paid to him within the three years preceding his retirement, death, or disability, payable over a three-year period, provided the deferred compensation did not exceed thirty percent of ROPA's gross receipts for the year the deferred payments were made. Id.

On or about February 8, 2001, Plaintiff altered the deferred compensation terms of the SREA by executing the Amendment to Radiation Oncologists, P.A. Senior Radiologist's Employment Agreement (the "Amended SREA"), which amended paragraphs 5(c) and (d) of the SREA. A copy of the Amended SREA is attached to the Appendix as Exhibit B. The Amended SREA substantially increased the deferred compensation to be received by Plaintiff, so that Plaintiff would receive $1,200,000 in deferred compensation payable over a four-year period following his retirement.

-3-

On or about December 27, 2002, Plaintiff executed the Deferred Compensation Agreement (the "DCA"). A copy of the DCA is attached to the Appendix as Exhibit C. The DCA provides that ROPA agrees to pay Plaintiff deferred compensation in the sum of $1,200,000 over four years, subject to non-competition and other conditions enumerated in the SREA, the Amended SREA, and the DCA (the Amended SREA, along with the DCA, shall be collectively referred to herein as the "Deferred Benefit Plan"). Id.

C.     Payments Under the Deferred Benefit Plan

Following Plaintiff's retirement on December 31, 2002, ROPA made payments to Plaintiff under the terms of the Deferred Benefit Plan for two years. These payments totaled $600,000.

On or about January 13, 2005, ROPA notified Plaintiff by letter (the "Notice") that it was terminating all future payments under the Deferred Benefit Plan due to Plaintiff's participation in amending the deferred compensation terms of his own SREA. A copy of the Notice is attached to the Appendix as Exhibit D. The Notice states that Plaintiff's actions in amending the terms of the SREA, through which Plaintiff substantially increased the amount of his deferred compensation benefits shortly before his planned retirement, constituted a breach of his fiduciary duties under the Deferred Benefit Plan, a plan that is an employee benefit plan under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq.

The Notice further states that Plaintiff has the right to request administrative review of ROPA's decision to terminate the deferred compensation payments. See Exhibit D. Pursuant to these administrative procedures, Plaintiff was

-4-

entitled to file a written statement indicating why he believed the termination of the deferred compensation payments was incorrect and attend an administrative hearing where Plaintiff would be permitted to submit written and oral evidence in support of his position. Id. Despite this notification of administrative remedies, Plaintiff chose to forego administrative review of the termination of the deferred compensation payments and filed this lawsuit.

D.    The Counts of the Complaint

By the Complaint, Plaintiff asserts four separate Counts against ROPA and one Count against the Defendant Doctors in their individual capacities. All of the Counts seek the recovery of deferred compensation benefits that the Plaintiff alleges the Defendants wrongfully denied him under the Deferred Benefit Plan.

Count I of the Complaint alleges that ROPA's actions constitute a breach of the Amended SREA and the DCA. Complaint at ¶¶ 39-43. By Count I, Plaintiff alleges that ROPA breached the terms of the Amended SREA and the DCA by ceasing to make "contractually required deferred compensation payments as of January 15, 2005." Complaint at ¶¶ 39-43.

Count II of the Complaint alleges that ROPA's actions violate ERISA. By Count II, Plaintiff requests the Court to enjoin ROPA from continuing to refuse to make the deferred compensation payments and to award him attorney's fees and costs. Complaint at ¶¶ 46-47.

Count III of the Complaint alleges that ROPA's alleged breach of the Deferred Benefit Plan was anticipatory. Plaintiff alleges that ROPA notified him that it would cease making the deferred compensation payments and, despite due demand, that

ROPA has refused to retract its repudiation of the Deferred Benefit Plan. Complaint at ¶¶ 49-51.

Count IV of the Complaint alleges a violation of the Delaware Wage Payment and Collection Act, 19 Del. C. § 1101, et seq. (the "DWPCA"). By Count IV, Plaintiff alleges that the deferred compensation payments are "wages" within the definitions provided by the DWPCA and that ROPA's refusal to make any further payments constitutes a violation of the DWPCA. Complaint at ¶¶ 54-56.

Count V of the Complaint is the only Count against the Defendant Doctors. Count V of the Complaint alleges that the Defendant Doctors are liable to Plaintiff in their individual capacities because they aided and abetted ROPA in breaching its obligation to pay Plaintiff the deferred compensation payments under the Deferred Benefit Plan. Complaint at ¶¶ 60-61, 64. None of the Defendant Doctors is listed on the Deferred Benefit Plan as a party responsible for administering or making payments of benefits under the Deferred Benefit Plan. See Exhibits B and C.

## STANDARD OF REVIEW

The Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Federal Rules") because the Complaint fails to state a claim upon which relief may be granted. See Fed. R. Civ. P. 12(b)(6). A Federal Rule 12(b)(6) motion tests the legal sufficiency of a complaint. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In analyzing a motion to dismiss pursuant to Federal Rule 12(b)(6), the court must accept as true all well-pleaded and material allegations of the complaint. See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). "But a court need not credit a complaint's 'bald assertions'

-6-

or 'legal conclusions' when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch.</u> <u>Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997) (citing <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1429-30 (3d Cir. 1997); <u>see also</u> Wright & Miller, <u>Federal Practice &</u> <u>Procedure</u> § 1357 (3d ed. rev. 2005)(citations omitted)(stating that courts are "not bound by a pleading's "legal conclusions," or its "unsupported conclusions," or its "unwarranted inferences," or its "unwarranted deductions," or its "footless conclusions of law," and its "sweeping legal conclusions cast in the form of factual allegations."). A court must grant a motion to dismiss when it appears that a plaintiff could prove no set of facts that would entitle him or her to the requested relief. See <u>Langford v. City of Atlantic City</u>, 235 F.3d 845, 847 (3d Cir. 2000).

<h3 align="center">BASIS FOR RELIEF REQUESTED</h3>

I. <u>Plaintiff's State Law Claims Are Preempted By ERISA</u>

Determining whether state law claims are preempted by ERISA entails a two part inquiry. First, the Court must determine whether the plan at issue qualifies as an ERISA employee benefit plan. If the Court concludes that the plan at issue is covered by ERISA, the Court must then determine if the Plaintiff's state law claims are preempted. See <u>Way v. Ohio Cas. Ins. Co.</u>, 346 F. Supp. 2d 711, 714 (D.N.J. 2004)(citing <u>Alston v.</u> <u>Atlantic Elec. Co.</u>, 962 F. Supp. 616, 622 (D.N.J. 1997)); <u>Pane v. RCA Corp.</u>, 667 F. Supp. 168,170 (D.N.J. 1987).

A. All of the Counts in the Complaint Relate to an ERISA Employee Benefit Plan

ERISA defines an "employee benefit plan" as an "employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee

-7-

welfare benefit plan and an employee pension benefit plan." 28 U.S.C. § 1002(2)(B)(3).

An "employee pension benefit plan" in turn is broadly defined as:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, or program –
>
>> (i) provides retirement income to employees, or
>>
>> (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond[.]

Id. at (2)(A)(i)-(ii). Moreover, "[b]ecause ERISA's definition of a pension plan is so broad, virtually any contract that provides for some type of deferred compensation will also establish a de facto pension plan, whether or not the parties intended to do so." Modzelewski v. Resolution Trust Corp., 14 F.3d 1374, 1377 (9th Cir. 1994). Indeed, even a single letter from a company president to a general manager established an ERISA plan where the letter provided that the general manager would be entitled to receive monthly checks for retirement benefits. See Williams v. White, 927 F.2d 1540 (11th Cir. 1991).

In White, the court advised that an ERISA plan is established if a reasonable person can ascertain from the surrounding circumstances the intended benefits, the beneficiaries, the source of financing, and the procedures for receiving benefits. Id. at 1543. Applying these standards to the letter from the company president to the general manager, the White court concluded that the letter established an ERISA plan, notwithstanding the fact that the general manager and his wife were the sole beneficiaries, the payments would come from the company's general assets, and the procedures for receiving the benefits were simple as they only entailed the company's

issuance of a monthly check. Id. at 1544-55. Further, the existence of a written document that satisfies the requirements imposed upon employee benefit plans pursuant to ERISA and the regulations thereunder is not a prerequisite to coverage under ERISA. See Smith v. Hartford Ins. Group, 6 F.3d 131, 136 (3d Cir. 1993); Donovan v. Dillingham, 688 F.2d 1367, 1372 (11th Cir. 1982).

In the instant case, it is undisputable that the Deferred Benefit Plan is an "employee benefit plan" under ERISA. The Deferred Benefit Plan clearly identifies the intended benefits, the beneficiary, the procedures for the receipt of benefits, the terms and limitations of Plaintiff's continued receipt of benefits (which includes, inter alia, non-competition obligations, cost-of-living adjustments, limitation of payments based on ROPA's annual profitability), and the source of financing. See Exhibits B and C. Based on these facts, the Deferred Benefit Plan is a plan that provides retirement income and a deferral of income to its beneficiaries, and thereby qualifies as an "employee benefit plan." See 29 U.S.C. § 1002(2)(A)(i)-(iii); see also Modzelewski, 14 F.3d at 1377 (holding that certain aspects of salary continuation agreements providing for deferred compensation to be paid upon certain triggering events (retirement, death or termination without cause), plainly fell within ERISA's definition of a pension plan as a plan containing some provision for retirement or deferred income).

Moreover, Count II of the Complaint asserts a claim under ERISA for failure to pay deferred compensation under the Deferred Benefit Plan. In Count II, Plaintiff alleges that ROPA's refusal to continue the deferred compensation payments constitutes a violation of ERISA. See Complaint at ¶¶ 44-47. By alleging that ROPA's refusal to pay Plaintiff deferred compensation under the Deferred Benefit Plan is a

violation of ERISA, and that he is entitled to recover these benefits under 29 U.S.C. §

1132 (the civil enforcement provision of ERISA), Plaintiff has admitted that such plan is

an "employee benefit pension plan" under 28 U.S.C. § 1002.  See Pugh v. Metro. Life

Ins. Co., 968 F. Supp. 178, 186 (D. Del. 1989) (stating that a plaintiff could not contest

preemption of a state law claim by arguing that the separation plan at issue did not

qualify as an ERISA plan because the plaintiff alleged elsewhere in the complaint that the

defendant had violated ERISA in its administration of the separation plan).

    B.    Plaintiff's State Law Claims are Preempted by ERISA

        Because the Deferred Benefit Plan qualifies as an "employee benefit plan"

subject to ERISA, the next inquiry is whether Plaintiff's state law claims to recover the

benefits allegedly due thereunder are preempted.  Pane, 667 F. Supp. at 170.  As

demonstrated below, all of Plaintiff's state law claims are clearly preempted by ERISA's

legislative scheme.

        Congress' intent in enacting ERISA was to promote the interests of

employees and their beneficiaries in employee benefit plans by "eliminating the threat of

conflicting or inconsistent State and local regulation of employee benefit plans."  Shaw v.

Delta Air Lines, Inc., 463 U.S. 85, 99 (1983)(quoting 120 Cong. Rec. 29933 (1974)).

Thus, Section 514 of ERISA, the "express preemption" provision, acts as a defense to

state law claims.  See Barber v. UNUM Life Ins. Co. of Am., 383 F.3d 134, 137 (3d Cir.

2004).

        Section 514 of ERISA provides, in pertinent part:

> Except as provided in subsection (b) of this section, the
> provisions of this subchapter and subchapter III of this
> chapter *shall supersede any and all State laws insofar as*

> *they may now or hereafter relate to any employee benefit*
> *plan* described in section 1003(a) of this title and not
> exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a) (emphasis added).[2]  The preemption provisions of ERISA,

particularly Section 514, are "'deliberately expansive, and designed to establish

[employee benefit] plan regulation as exclusively a federal concern.'"  Pugh v. Metro.

Life Ins. Co., 968 F. Supp. 178 (D. Del. 1997)(quoting Pilot Life Ins. Co. v. Dedeaux,

481 U.S. 41, 46 (1987))(alterations in original); see also Way, 346 F. Supp. 2d at 718

(citing Ingersoll-Rand Co. v. McClendon, 498 U.S. 133 (1990)); Young v.

Reconstructive Orthopedic Assocs., II, P.C., No. Civ. A. 03-2034, 2005 WL 627796, at

*4 (E.D. Pa. March 16, 2005) (a copy of this unreported decision is attached to the

Appendix as Exhibit E); Ercole v. Conective and Coventry Health Care of Delaware,

Inc., No. Civ. A. 03-186, 2003 WL 21104926, at *2 (D. Del. May 15, 2003)(citations

omitted)(a copy of this unreported decision is attached to the Appendix as Exhibit F).

"[T]he phrase 'relate to' was given its broad common-sense meaning, such that a state

law 'relate[s] to a benefit plan in the normal sense of the phrase, if it has a connection

with or reference to such a plan.'"  Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S.

724, 739 (1985).  Further, "'even indirect state action bearing on private pensions may

encroach upon the area of exclusive federal concern.'"  Id. (quoting Alessi v. Raybestos-

Manhattan, Inc., 451 U.S. 504, 525 (1981).

        Moreover, state law claims that seek the same relief provided by Section

502 of ERISA, ERISA's civil enforcement provision, are necessarily preempted by

---

[2]       The term "State laws" in Section 514 of ERISA means "all laws, decisions, rules,
regulations, or other State action having the effect of law, of any State."  29
U.S.C. § 1144(c)(1).

Section 514.  Young, 2005 WL 627796, at *4 (citing Jones v. Prudential Ins. Co. of Am.,

No. 99-CV-5458, 2000 WL 274009, at *2 n.1, *4 (E.D. Pa. March 10, 2000)).  Section

502 of ERISA provides, in pertinent part:

> A civil action may be brought--
>
> (1) by a participant or beneficiary—
>
> . . .
>
> (B) *to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan,* or to clarify his rights to future benefits under the terms of the plan[.]

29 U.S.C. § 1132(a) (emphasis added).  Under the plain language of Section 514 and 502

of ERISA, Plaintiff's state law claims are all attempts to recover benefits allegedly due to

him under the terms of the Deferred Benefit Plan and, consequently, are preempted by

ERISA.

> 1.  Counts I and III – Breach of Contract and Anticipatory Repudiation

Counts I and III of the Complaint are preempted by ERISA because they

are claims to recover benefits allegedly due to Plaintiff under the terms of the Deferred

Benefit Plan.  In Count I, Plaintiff alleges that "ROPA knowingly, willingly and

voluntarily entered into the obligations set forth in [the Deferred Benefit Plan.]"

Complaint at ¶ 38.  Plaintiff also alleges that "[w]ithout justification and in bad faith,

ROPA ceased making the contractually required deferred compensation payments as of

January 15, 2005," that "ROPA continues to fail to make any additional contractually

required deferred compensation payments to [Plaintiff] . . . and ROPA is therefore in

default of the terms of the [Deferred Benefit Plan]."  Complaint at ¶¶ 40, 41.  Count III of

the Complaint, which alleges a claim for anticipatory repudiation, merely incorporates the allegations of Count I and alleges that ROPA's breach of contract was anticipatory.

Courts have uniformly and repeatedly held that breach of contract claims seeking the recovery of benefits from an ERISA employee benefit plan, similar to Counts I and III of the Complaint, are preempted because they "relate to" an ERISA plan. <u>See</u> <u>Nester v. Allegiance Healthcare Corp.</u>, 162 F. Supp. 2d 901, 906 (S.D. Ohio 2001), <u>aff'd</u>, 315 F.3d 610 (6th Cir. 2003) ("Although the Plaintiffs have packaged their claim as one for breach of contract, it is really a claim by ERISA plan participants for ERISA plan benefits arising under 29 U.S.C. § 1132(a)(1)(B)"); <u>Way</u>, 345 F. Supp. 2d at 718-20 (dismissing a contract claim because it was related to a plan covered by ERISA); <u>Haeffele v. Hercules</u>, 703 F. Supp. 326, 330 (D. Del. 1989) (dismissing a contract claim for specific performance as it was a claim for pension benefits under Section 502 of ERISA); <u>Pane</u>, 667 F. Supp. at 172 (holding that the plaintiff's breach of contract claim was preempted because it sought enforcement of his rights under a plan covered by ERISA); 1 <u>ERISA Practice & Procedure</u> § 2:14 (Rev. 2005)(stating that common law contract actions to recover benefits from a plan covered by ERISA are consistently held to be preempted).

In the instant case, Counts I and III seek the recovery of benefits allegedly owed to Plaintiff under the Deferred Benefit Plan. These causes of action are explicitly covered by Section 502 of ERISA, as they are actions by Plaintiff "to recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan[.]" 29 U.S.C. § 1132(a). These claims go to the heart of ERISA's legislative scheme and clearly are "related to" an employee benefit plan. <u>See Young</u>, 2005 WL

627796, at *4 (citing Jones, 2000 WL 274009, at *2 n.1, *4 (E.D. Pa. March 10, 2000))(stating that claims that fall under Section 502 of ERISA are necessarily preempted under Section 514, the "express preemption" provision). Accordingly, Counts I and III of the Complaint must be dismissed.

### 2. Count IV – State Wage and Collection Act Claim

Count IV of the Complaint, which alleges a violation of the DWPCA, is also preempted as it "relates to" an ERISA employee benefit plan. In Count IV, Plaintiff alleges that the deferred compensation payments under the Deferred Benefits Plan are wages under the DWPCA. Complaint at ¶ 54. Plaintiff alleges that ROPA failed to make the deferred compensation payments under the Deferred Benefit Plan and that this failure violates the DWPCA.

Numerous courts have held that the characterization of a claim for the recovery of benefits from an employee benefit plan as a state statutory wage payment action will not prevent it from being preempted. In a case presenting facts similar to the instant dispute, Pugh v. Metropolitan Life Insurance Company, 968 F. Supp. 178 (D. Del. 1997), the court held that a claim under the DWPCA, predicated on alleged violations of an employee benefit plan, was preempted by ERISA.

The plaintiff in Pugh asserted a DWPCA claim against the defendant on the basis that the defendant did not pay her separation pay as required by the defendant's employee benefits plan. The defendant argued that these claims should be rejected by the court as they were preempted by ERISA. Id. at 186.

In holding that the plaintiff's DWPCA claim was preempted, the Pugh court rejected out of hand the plaintiff's contention that her DWPCA claim did not relate

to the defendant's employee benefits plan because it was a statutory action to recover wages. Based on the "'broad common-sense meaning of 'relate to,''" the court held that the plaintiff "can hardly be heard to argue [that] her claim – which is rooted in an alleged failure of [the defendant] to obey the provisions of the Separation Plan – has no connection with an employee benefit plan." Id. at 186-87 (quoting Metropolitan, 471 U.S. at 739); see also Jones v. Baskin Flaherty Elliot & Mannino, P.C., 788 F. Supp. 878, 879 (W.D. Pa. 1992)(holding that a similar claim under the Pennsylvania Wage Payment and Collection Act was preempted by ERISA).

Here, as in Pugh, it is beyond dispute that Count IV of the Complaint alleges a claim related to the Deferred Benefit Plan. In Count IV, Plaintiff alleges that ROPA failed to pay him deferred compensation payments as required under the Deferred Benefit Plan and that this failure violated the DWPCA. Complaint at ¶¶ 55-56. This claim is directly "related to" the Deferred Benefit Plan, a plan that constitutes an employee benefit plan under ERISA. Accordingly, the Court must also dismiss Count IV of the Complaint.

### 3.   Count V – Civil Conspiracy

Count V of the Complaint, civil conspiracy, the only claim directed against the Defendant Doctors, is also preempted. Plaintiff alleges in Count V that the Defendant Doctors engaged in a course of conduct that wrongfully denied Plaintiff the benefits owed to him under the Deferred Benefit Plan. Complaint at ¶ 60. Plaintiff alleges that the Defendant Doctors aided and abetted ROPA in "reneging on its obligations to [Plaintiff] pursuant to the express language of the [Deferred Benefit Plan]"

and that this action "was in bad faith and caused a bad faith breach of contract and violation of ERISA by ROPA as alleged in Counts I and II." Complaint at ¶¶ 61, 64.

Count V, as with Counts I, III, and IV, is directly related to the Deferred Benefit Plan. As noted above, Section 514 of ERISA preempts any state law related to an employee benefit plan. This preemption goes so far as to "include[] any state law cause of action . . . even if it arises under a general law which in and of itself has no connection to employee benefit plans." See Christopher v. Mobil Oil Corp., 950 F.2d 1209, 1218-19 (5th Cir. 1992)(citation omitted).

Applying these standards to Count V of the Complaint, preemption is mandated. Plaintiff's allegations in Count V are inseparable from his allegations regarding breach of the Deferred Benefit Plan. Indeed, it is the alleged breach of the Deferred Benefit Plan that is the wrongful conduct the Defendant Doctors allegedly combined to commit.

In cases with allegations similar to those of the instant dispute, courts have repeatedly held that state law civil conspiracy claims, aimed at recovering benefits under an employee benefit plan, are preempted by ERISA. See Erwin v. U-Haul Int'l, Inc., No. Civ. A. 3:01-CV-2218-M, 2002 WL 265075, at *1, n.2 (N.D. Tex. Feb. 22, 2002)(holding that a claim of civil conspiracy based on the alleged wrongful denial of benefits under a qualified ERISA plan was preempted)(a copy of this unreported decision is attached to the Appendix as Exhibit G); see also Mobil Oil, 950 F.2d at 1217 (concluding that because evaluating plaintiff's civil conspiracy claim would require examining the operation of the plan and the language of the plan amendments, the civil conspiracy claim was preempted); Denk v. Boeing Co., 885 F. Supp. 690, 694 (E.D. Pa.

1995)(holding that a civil conspiracy claim alleging that the defendants conspired to defraud the plaintiff of her benefits was preempted); <u>Alberts v. Indep. Blue Cross and Pennsylvania Blue Shield</u>, No. Civ. A. 96-CV-3926, 1996 WL 677512, at *1 (E.D. Pa. Nov. 22, 1996)(concluding that a civil conspiracy claim based on an alleged wrongful denial of insurance benefits under a plan subject to ERISA was preempted)(a copy of this unreported decision is attached to the Appendix as Exhibit H).[3]

In addition to the foregoing reasons for dismissing Count V, the only count against the Defendant Doctors, the Court should also dismiss the Defendant Doctors in their individual capacities because they are not proper defendants under ERISA. Under ERISA, "any money judgment under this subchapter against an employee benefit plan shall be enforceable *only against the plan as an entity* and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter." 29 U.S.C. § 1132(d)(2)(emphasis added). Indeed, the Third Circuit has warned that "district courts should not easily fashion additional ERISA claims and parties outside congressional intent under the guise of federal common law." <u>Curcio v. John Hancock Mut. Life Ins. Co.</u>, 33 F.3d 226, 235 (3d Cir. 1994)(citing <u>Plucinski v. I.A.M. Nat'l Pension Fund</u>, 875 F.2d 1052, 1056 (3d Cir.

---

[3]    Notwithstanding the fact that the Court should dismiss Count V in its entirety, the Defendants note that Plaintiff's requested relief in Count V, punitive damages, is precluded by ERISA and, therefore, the Defendants move to strike this part of the Complaint pursuant to Federal Rule 12(f). <u>See</u> <u>Pane</u>, 868 F.2d at 635 (affirming the district court's decision (i) that the plaintiff's state law claims were preempted and (ii) that the request for punitive damages under the state law claims was not available under ERISA); <u>Huss v. Green Spring Health Servs., Inc.</u>, 18 F. Supp. 2d 400, 406-08 (D. Del. 1998)(stating that punitive damages are not available under ERISA); <u>Ercole</u>, 2003 WL 21104926, at *2 (holding that in addition to the fact that the state law claims were preempted by ERISA, the punitive damages sought by the plaintiff's state law claims were not permitted by ERISA).

1989)). This is a simple case for the recovery of deferred compensation benefits under an employee benefit plan subject to ERISA. Under these circumstances, the Defendant Doctors, in their individual capacities, are clearly inappropriate parties to this lawsuit.

In addition, in determining whether a named defendant is a proper defendant to an ERISA claim, a court may evaluate whether the proposed defendant controlled the management of the plan's assets, managed the plan itself, or maintained responsibility over the plan. See Vaughn v. Metropolitan Life Ins. Co., 87 F. Supp. 2d 421, 425 (E.D. Pa. 2000). To determine whether a proposed defendant satisfies any of these factors, the court should look to the language of the plan itself. Id. at 426.

In this case, the Defendant Doctors are not listed in the Deferred Benefit Plan as the parties responsible for management of the plan, management of its assets, or its administration. See Exhibits A, B, and C. To the contrary, the Defendant Doctors are not mentioned at all in the Deferred Benefit Plan. The only entity named in the Deferred Benefit Plan with any responsibility for its administration or management is ROPA itself. See id.; see also 29 U.S.C. § 1002(16)(A)(ii) (providing that in the absence of a designated plan administrator, the plan sponsor/employer shall be considered the plan administrator). For these reasons, the Defendant Doctors cannot be sued in their individual capacities for the recovery of deferred compensation benefits allegedly due under the Deferred Benefit Plan and must be dismissed.

II. Count II Should be Dismissed because Plaintiff has Failed to Exhaust his Administrative Remedies as Required by ERISA

In general, Section 503 of ERISA requires that, in accordance with regulations issued by the United States Department of Labor, every employee benefit plan must afford a "reasonable opportunity to any participant whose claim for benefits

-18-

has been denied for a full and fair review by the appropriate named beneficiary." See 29 U.S.C. § 1133(2). In its letter dated January 13, 2005, ROPA informed Plaintiff of such right to a full and fair administrative appeal related to ROPA's denial of further payments under the Deferred Benefit Plan.

The institution of claims-resolution procedures is required by ERISA in order to: (i) help reduce the number of frivolous lawsuits under ERISA; (ii) promote the consistent treatment of claims for benefits; and (iii) minimize the costs of claims settlement for all parties. See Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir. 2002)(citations omitted); Amato v. Bernard, 618 F.2d 559, 567-68 (9th Cir. 1980). Furthermore, having actions fully considered at the administrative level assists the courts when they are called upon to resolve controversies involving employee benefit plans subject to ERISA. Amato, 618 F.2d at 567-68. It would be anomalous if the same good reasons that presumably led Congress to require plans subject to ERISA to provide administrative remedies for aggrieved claimants did not lead courts to see that those remedies are regularly used. Id.

Accordingly, federal courts have adopted and followed the policy of requiring a claimant under an employee benefit plan subject to ERISA to exhaust the required administrative remedies prior to filing an action in federal court. See Kilkenny v. Long, 288 F.3d 116, 122-23 (3d Cir. 2002)("Under ERISA, internal administrative remedies like the arbitration procedures mandated in the labor agreements must be exhausted prior to bringing suit in federal court.")(citation omitted); Harrow, 279 F.3d at 249 ("'Except in limited circumstances . . . a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan.'")(quoting

-19-

<u>Weldon v. Kraft, Inc.</u>, 896 F.2d 793, 800 (3d Cir. 1990)); <u>Springer v. Wal-Mart Assocs.'</u> <u>Group Health Plan</u>, 908 F.2d 897, 900 (11th Cir. 1990)("[I]t is no longer open to serious dispute that plaintiffs in ordinary breach-of-contract ERISA actions must normally exhaust available administrative remedies); <u>Denton v. First Nat'l Bank of Waco, Texas,</u> 765 F.2d 1295, 1300-02 (5th Cir. 1985)(same). Indeed, courts have noted that as a matter of sound policy a federal court should usually enforce the exhaustion requirement under ERISA. <u>Amato</u>, 618 F.2d at 567.

    In the instant case, despite clear notice from ROPA of the availability of an administrative appeal with regard to this matter, Plaintiff ignored such notice and filed this action shortly thereafter. Thus, in order to promote the sound policies for requiring exhaustion of administrative remedies enumerated by various federal courts, this Court should dismiss Count II of the Complaint for Plaintiff's failure to avail himself of the administrative appeal described in the January 13, 2005 letter from Defendant ROPA to Plaintiff and required by Section 503 of ERISA.

CONCLUSION

    For the foregoing reasons, the Court should dismiss the Complaint. Counts I, III, IV, and V of the Complaint are preempted by ERISA. They are all claims to recover benefits allegedly due to Plaintiff under an employee benefit plan subject to ERISA. Count II of the Complaint must also be dismissed because Plaintiff has failed to exhaust his administrative remedies.

WHEREFORE, the Defendants request that the Court enter an order dismissing the Complaint.

Date:    June 3, 2005
         Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL

William H. Sudell, Jr. (No. 463)
Curtis S. Miller (No. 4583)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

Counsel for Defendants Radiation Oncologists,
P.A., Viroon Donavanik, M.D., Michael F. Dzeda,
M.D., Christopher Koprowski, M.D., Adam Raben,
M.D., Sunjay Shah, M.D., and Michael D.
Sorensen, M.D.

466713

-21-