# EXHIBIT F

Westlaw.

Not Reported in F.Supp.2d
Page 1
2003 WL 21104926 (D.Del.), 30 Employee Benefits Cas. 2841
**(Cite as: 2003 WL 21104926 (D.Del.))**

C

**Motions, Pleadings and Filings**

United States District Court,
D. Delaware.
Jennifer L. ERCOLE, Plaintiff
v.
CONECTIVE AND COVENTRY HEALTH CARE
OF DELAWARE, INC., Defendants.
**No. Civ.A. 03-186 GMS.**

May 15, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

*1 On February 10, 2003, the plaintiff, Jennifer L. Ercole ("Ercole"), filed a complaint and a motion for a temporary restraining order ("TRO") against Coventry Health Care of Delaware, Inc. ("Coventry") and Conectiv ("Conectiv"), alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The complaint also contains a claim for breach of contract in connection with the denial of authorization for a medical procedure under Ercole's health plan. The court held a hearing on the motion for TRO on February 12, 2003. On February 13, 2003, the court denied the motion for TRO without prejudice.

Presently before the court is Coventry's motion to dismiss Ercole's breach of contract and bad faith claim on the basis that it is preempted by ERISA. For the following reasons, the court will grant this motion.

II. BACKGROUND

Ercole is a participant in an employee welfare benefit plan called the Coventry Point of Service Plan (the "Plan"), sponsored by Conectiv. The Plan provides coverage for authorized medical services, but excludes, among other things, "experimental procedures or treatments."

In 2002, Ercole's treating oncologist, Dr. S. Eric Martin ("Dr.Martin") diagnosed her with Chronic Lymphocytic Leukemia ("CLL"). He then sought authorization from Coventry for a pre-transplant evaluation to determine whether a bone marrow transplant would be appropriate. On December 4, 2002, Coventry authorized "evaluation services for an allogenic bone marrow transplant."

Following the pre-transplant evaluation, Dr. Martin recommended that Ercole undergo an allogenic bone marrow transplant. Before she could do so, however, the Plan required her to seek pre-authorization from Coventry. Coventry denied pre-authorization for the requested transplant because it determined that the procedure was experimental and, therefore, not a covered benefit under the Plan.

Ercole appealed the denial of authorization through the internal appeals procedure provided for in the Plan. Once again, her request for authorization was denied on the basis that the procedure was experimental. Ercole then appealed to the Conectiv Benefits Committee ("the Committee"). On January 31, 2003, the Committee upheld Coventry's determination that the procedure was experimental and thus excluded under the terms of the Plan.

Having exhausted her rights of appeal under the Plan, Ercole filed the above-captioned action.

III. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted when,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d     Page 2

2003 WL 21104926 (D.Del.), 30 Employee Benefits Cas. 2841

**(Cite as: 2003 WL 21104926 (D.Del.))**

accepting all well-pleaded factual allegations as true, the plaintiff is not entitled to relief as a matter of law. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1420 (3d Cir.1997). While the court must accept the factual allegations in the complaint as true, it "need not credit a complaint's 'bald assertions' or 'legal conclusions." ' *Id.* at 1429 (citation omitted). Therefore, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir.1996).

IV. DISCUSSION

*2 Coventry contends that Ercole's common law claim for breach of contract and bad faith is preempted by ERISA. In response, Ercole contends that her bad faith breach of contract claim is saved from preemption because it concerns a "state law regulating insurance." As such, Ercole maintains that ERISA's Savings Clause, 29 U.S.C. § 1144(b)(2)(A), applies. [FN1] For the following reasons, the court concludes that this claim is preempted by ERISA.

> FN1. Section 1144(b)(2)(A) states that, "[e]xcept as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."

ERISA includes an express provision that preempts state law claims for benefits. That clause provides that:
> [e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....

29 U.S.C. § 1144(a). Additionally, courts have recognized that ERISA's preemption clause was drafted deliberately for broad application. *See e.g. FMC Corp. v. Holliday,* 498 U.S. 52, 58 (1990) (noting that the "preemption clause is conspicuous for its breadth"); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45-46 (1987), *rev'd in part,* 123 S.Ct. 1471 (2003) (finding that "the express preemption provisions of ERISA are deliberately expansive"); *Huss v. Green Spring Health Svcs., Inc.,* 18 F.Supp.2d 400, 403 (D.Del.1998).

The Supreme Court of the United States recently clarified the test to determine whether a state law may be deemed a "law which regulates insurance" under Section 1144(b)(2)(A). *See Kentucky Assoc. of Health Plans, Inc. v. Miller,* 123 S.Ct. 1471 (2003). First, the state law must be "specifically directed toward entities engaged in insurance." *Id.* at 1479. Second, the state law must substantially affect the risk pooling arrangement between the insurer and the insured. *See id.*

Applying the *Miller* test to the facts presently before the court, it is clear that the bad faith breach of contract claim alleged in Count Two of Ercole's complaint does not fall under a state law regulating insurance for purposes of the Savings Clause. Count Two alleges that Coventry acted in bad faith and in breach of the implied duty of good faith and fair dealing when it denied coverage for her bone marrow transplant after having authorized pre-transplant testing. In support of her position, Ercole maintains that Delaware law only recognizes such a bad faith claim based on an insurance contract. The Supreme Court of Delaware, however, permits claims for breach of the implied covenant of good faith and fair dealing in the employment context as well. [FN2] *See e.g. Schuster v. Derocili,* 775 A.2d 1029 (Del.2001). Accordingly, Count II of Ercole's complaint fails to meet the first prong of the *Miller* test.

> FN2. Relying on *DuPont de Nemours and Co. v. Pressman,* Ercole claims that an action for punitive damages for bad faith and breach of the covenant of good faith and fair dealing are permitted only under insurance contracts. 679 A.2d 436 (Del.1996). Although it is true that *Pressman* rejected a claim for punitive damages for breach of the covenant of good faith and fair dealing in the employment context, the unavailability of punitive damages in bad faith actions

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 3

2003 WL 21104926 (D.Del.), 30 Employee Benefits Cas. 2841

**(Cite as: 2003 WL 21104926 (D.Del.))**

outside of the insurance context does not compel the conclusion that Ercole's claim here is one specifically directed to the insurance industry. Indeed, while Count II of Ercole's complaint seeks punitive damages, it also seeks other relief which is undeniably available outside of the insurance context.

Additionally, in *Pilot Life,* the Supreme Court of the United States struck down a state law which allowed the recovery of punitive damages because the law conflicted with ERISA by allowing an additional ERISA remedy. In so holding, the Court noted that, "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." 481 U.S. at 54. Thus, to the extent Ercole seeks to save this claim by virtue of her request for punitive damages, this argument must fail.

Moreover, assuming *arguendo* that Ercole's bad faith claim is "specifically directed to entities engaged in insurance," her claim nevertheless fails part two of the *Miller* test. There can be little dispute that the Delaware state bad faith cause of action does not substantially affect risk pooling between insurer and insured. Rather, it simply provides extra-contractual damages not permitted by ERISA. As such, the court concludes that the Delaware bad faith statute does not spread a policyholder's risk. *See Rosenbaum v. UNUM Life Ins. Co.,* 2002 WL 1769899, *2 (E.D.Pa. July 29, 2002) (finding that Pennsylvania's bad faith in insurance claims statute did not spread a policy-holder's risk); *Sprecher v. Aetna U.S. Healthcare, Inc.,* 2002 WL 1917711, * 7 (E.D.Pa. Aug. 19, 2002) (holding that, because the Pennsylvania bad faith in insurance claims statute primarily allowed tort claims for relief not provided for by ERISA, such as punitive damages, it was preempted by ERISA). Having failed both prongs of the *Miller* test, Ercole's claim for bad faith breach of contract is thus preempted.

IV. CONCLUSION

*3 For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Coventry's Motion to Dismiss Count II of the Complaint (D.I.16) is GRANTED.

2003 WL 21104926 (D.Del.), 30 Employee Benefits Cas. 2841

**Motions, Pleadings and Filings (Back to top)**

- 1:03CV00186  (Docket)
(Feb. 10, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.