IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DONALD C. TILTON, D.O.,                           :
                                                  :
                Plaintiff,                        :
                                                  :
        v.                                        :    Civil Action No. 05-00251 (SLR)
                                                  :
RADIATION ONCOLOGISTS, P.A.,                      :
VIROON DONAVANIK, M.D.,                           :
MICHAEL F. DZEDA, M.D.,                           :
CHRISTOPHER KOPROWSKI, M.D.,                      :
ADAM RABEN, M.D., SUNJAY                          :
SHAH, M.D., AND MICHAEL D.                        :
SORENSEN, M.D.,                                   :
                                                  :
                Defendants.                       :

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

MORRIS, NICHOLS, ARSHT & TUNNELL
William H. Sudell, Jr. (No. 463)
Curtis S. Miller (No. 4583)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

Counsel for Defendants Radiation Oncologists, P.A.,
Viroon Donavanik, M.D., Michael F. Dzeda, M.D.,
Christopher Koprowski, M.D., Adam Raben, M.D.,
Sunjay Shah, M.D., and Michael D. Sorensen, M.D.

August 5, 2005

Wilmington, Delaware

## <u>TABLE OF CONTENTS</u>

Page

SUMMARY OF REPLY ........................................................................................... 1

ARGUMENT ........................................................................................................... 3

I.   PREEMPTION OF COUNTS I, III, AND IV .................................................... 3

II.  COUNT V, THE CIVIL CONSPIRACY CLAIM, IS PREEMPTED ............................... 6

III. COUNT II MUST BE DISMISSED FOR FAILURE TO EXHAUST
ADMINISTRATIVE REMEDIES ........................................................................ 10

   A.   The Absence of the Required Written Plan Procedures Does Not Excuse Plaintiff from
   Complying with a Requirement Regularly Mandated in ERISA Matters ........................... 10

   B.   The Court Should Not Excuse Plaintiff from Exhausting the Available Administrative
   Remedies by Reason of "Futility" ...................................................................... 12

   C.   The January 13, 2005 Letter from ROPA to Plaintiff Sufficiently Notified Plaintiff of
   the Basis for the Termination of the Deferred Compensation Payments and the Availability
   of Administrative Review of his Claim ................................................................ 15

CONCLUSION........................................................................................................ 19

## TABLE OF AUTHORITIES

Page

**Cases**

Adkins v. Holland,
216 F. Supp. 2d 576 (S.D. W.Va. 2002)................................................................... 18

Alaire v. Amoco Corporation,
No. 90 C 611, 1990 WL 70486 (N.D. Ill. 1990)......................................................... 14

Alberts v. Indep. Blue Cross and Pennsylvania Blue Shield,
No. Civ. A. 96-3926, 1996 WL 677512 (E.D. Pa. Nov. 22, 1996) ........................................ 7, 8

Amato v. Bernard,
618 F.2d 559 (9th Cir. 1980) ................................................................................ 14, 15

Argenbright v. Zix Corp.,
No. Civ. 3:04-CV-1061-H, 2005 WL 142775 (N.D. Tex. June 14, 2005) ................................. 9

Baskin Flaherty Elliott & Mannino,
788 F. Supp. 878 (W.D. Pa. 1992)........................................................................... 7

Dale v. Chicago Tribune Co.,
797 F.2d 458 (7th Cir. 1986) ................................................................................. 14

Deibler v. United Food and Commercial Workers' Local Union 23,
973 F.2d 206 (3d Cir. 1992) .................................................................................. 4

Denk v. Boeing Co.,
885 F. Supp. 690 (E.D. Pa. 1995)........................................................................... 8

Denton v. First Nat'l Bank of Waco, Texas,
765 F.2d 1295 (5th Cir. 1985) ............................................................................... 13, 14

Donavan v. Dillingham,
688 F.2d 1367 (11th Cir. 1982) ............................................................................. 11

Gallo v. Amoco Corp.,
102 F.3d 918 (7th Cir. 1996) ................................................................................. 18

Garred v. General American Life Ins. Co.,
774 F. Supp. 1190 (W.D. Ark. 1991) ....................................................................... 19

Hill v. City of Scranton,
411 F.3d 118 (3d Cir. 2005) ................................................................................. 7

Huss v. Green Spring Health Servs., Inc.,
18 F. Supp. 2d 400 (D. Del. 1998).......................................................................... 7, 9, 10, 11

Jass v. Prudential Health Care Plan, Inc.,
88 F.3d 1482 (7th Cir. 1996) ................................................................................. 9

Kent v. United of Omaha Life Ins. Co.,
  96 F.3d 803 (6th Cir. 1996) ................................................................... 17

Kinkead v. Soutwestern Bell Corporation Sickness & Accident Disability Benefit Plan,
  111 F.3d 67 (8th Cir. 1997) ................................................................... 12

Kriner v. GTE Products Corporation,
  No. 1:CV-89-907, 1990 WL 597393 (M.D. Pa. 1990) ............................ 15

Makar v. Health Care Corp.,
  872 F.2d 80 (4th Cir. 1989) ................................................................... 13

Manly v. Associates in Obstetrics and Gynecology, P.A.,
  No. Civ. A. 00C-049, 2001 WL 946489 (Del. Super. Ct. July 27, 2001) ................................. 5

McDonald v. Provident Indem. Life Ins. Co.,
  60 F.3d 234 (5th Cir. 1995) ................................................................... 8

McGowin v. Manpower Int'l, Inc.,
  363 F.3d 556 (5th Cir. 2004) ................................................................. 8

Modzelewski v. Resolution Trust Corp.,
  14 F.3d 1374 (9th Cir. 1994) ................................................................. 4

Murphy v. Wal-Mart Associates' Group Health Plan,
  928 F. Supp. 700 (E.D. Tex. 1996) ........................................................ 18

Pilot Life Ins. Co. v. Dedeaux,
  481 U.S. 41 (1987) ................................................................................ 10

Pugh v. Metro Life Ins. Co.,
  968 F. Supp. 178 (D. Del. 1997) ............................................................ 10

Shaw v. Delta Air Lines, Inc.,
  463 U.S. 85 (1983) ................................................................................ 9

Springer v. Wal-Mart Assocs.' Group Health Plan,
  908 F.2d 897 (11th Cir. 1990) .......................................................... 13, 14

Sys. 99 Minority S'holders v. Robison,
  953 F.2d 1388, 1992 WL 16801 (9th Cir. Feb. 4, 1992) ........................ 9

Tappe v. Alliance Capital Mgmt L.P.,
  177 F.Supp.2d 176 (S.D.N.Y. 2001) ..................................................... 6

Tolle v. Carroll Touch, Inc.,
  23 F.3d 174 (7th Cir. 1994) ................................................................... 17

Tolton v. Am. Biodyne,
  48 F.3d 937 (6th Cir. 1985) ................................................................... 10

Williams v. White
  927 F.2d 1540 (11th Cir. 1991) ............................................................. 5

York v. Ramsay Youth Servs. of Dothan, et al.,
  313 F. Supp. 2d 1275 (M.D. Ala. 2004) ................................................ 9

**Other Authorities**

19 Del. C. § 1101 ............................................................................................................ 7

29 C.F.R. § 2560 ....................................................................................................... 11, 16

29 U.S.C. § 1001 ............................................................................................................ 2

29 U.S.C. § 1002 .......................................................................................................... 12

29 U.S.C. § 1131 .......................................................................................................... 17

29 U.S.C. § 1133 .................................................................................................... passim

29 U.S.C. § 1144 .................................................................................................. 2, 3, 10

## SUMMARY OF REPLY

The Court should grant the Defendants' Motion to Dismiss (the "Motion").   As set forth in the Defendants' Brief in Support of Motion to Dismiss (the "Opening Brief"), Counts I, III, IV, and V of the Complaint (the "State Law Claims") are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq.   Count II of the Complaint should be dismissed because Plaintiff has failed to exhaust his administrative remedies.

In Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss (the "Answering Brief"), Plaintiff does not contest that the State Law Claims (Counts I, III-IV) are preempted by ERISA's express preemption provision, 29 U.S.C. § 1144 (a), if the Radiation Oncologists, P.A. Senior Radiologist's Employment Agreement (the "SREA"), the Amendment to Radiation  Oncologists, P.A. Senior Radiologist's Employment Agreement (the "Amended SREA"), and the Deferred Compensation Agreement (the "DCA")(the Amended SREA, together with the DCA shall be referred to as the "Deferred Benefit Plan"), which provide for Defendant Radiation Oncologists, P.A.'s ("ROPA") payment of deferred compensation to Plaintiff, is an employee benefit plan subject to ERISA.  Answering Brief at 14.  The Deferred Benefit Plan identifies the benefits provided, the intended beneficiaries, the procedures for receipt of benefits, the terms and limitations of continued receipt of benefits, and the source of financing.  Under applicable law, this is all that is necessary for the Deferred Benefit Plan to be an employee benefit plan subject to ERISA.

With respect to dismissal of Count V of the Complaint, Plaintiff's arguments that this state law claim is not preempted by ERISA because he named the Defendant Doctors individually and requested punitive damages, a remedy that is not available under ERISA, are

1

without merit.    The underlying conduct at issue, i.e. Plaintiff's non-receipt of deferred compensation payments under the Deferred Benefit Plan, cannot be divorced from Count V's allegations regarding civil conspiracy.  The wrongful conduct for which the Defendant Doctors are alleged to have combined to commit is the denial of Plaintiff's deferred compensation.  As affirmed by numerous courts, Plaintiff cannot avoid preemption by "artfully" pleading a claim that attempts to avoid ERISA coverage.  Count V clearly "relates to" an employee benefit plan and, consequently, is preempted.  See 29 U.S.C. § 1144(a).

With respect to Count II, Plaintiff agrees that courts require ERISA claimants to exhaust administrative remedies prior to filing suit in federal court; yet, despite this knowledge, he chose to disregard administrative review and filed the instant action.  Plaintiff's attempts to avoid this failure to exhaust the administrative remedies under the Deferred Benefit Plan should be rejected by the Court.  First, the absence of any appeal procedures in the Deferred Benefit Plan are the result of Plaintiff's actions (or inactions).  Plaintiff was president of ROPA at the time the SREA was executed and was the party responsible for establishing plan documents that complied with ERISA statutory and regulatory requirements.  It would be entirely inequitable for the Court to permit Plaintiff to escape exhaustion based on the absence of ERISA mandated administrative procedures when he was the individual charged with creating a plan consistent with ERISA requirements.

Further, Plaintiff has not shown that administrative review of his claim would be futile.  Plaintiff's arguments regarding futility, that an appeal is futile if the review is conducted by the entity administering the ERISA plan, if accepted by this Court, would completely undermine the legislative policy favoring exhaustion.  Finally, the letter notifying Plaintiff of the termination of the deferred compensation benefits complies with applicable ERISA

requirements.  See Exhibit D to the Complaint.  The letter apprised Plaintiff of the basis of the termination of his deferred compensation benefits and provided a detailed explanation of the administrative review procedures.

ARGUMENT

I.  PREEMPTION OF COUNTS I, III, AND IV

Plaintiff does not dispute that Counts I, III, and IV are preempted if the Deferred Benefit Plan is an employee benefit plan subject to ERISA.  Plaintiff, however, asserts that dismissal is inappropriate because (i) he has alleged Counts I, III, and IV in the alternative to Count II, a claim under ERISA for the deferred compensation benefits, and (ii) an evidentiary hearing and discovery are necessary for the Court to determine whether the Deferred Benefit Plan is an employee benefit plan subject to ERISA regulation.  See Answering Brief at 14-16. Neither of these arguments precludes a dismissal of Counts I, III, and IV at the pleading stage as these claims are barred by the "express preemption" provision of ERISA.

The Deferred Benefit Plan is an employee benefit plan subject to ERISA.  As set forth in the Opening Brief (see Opening Brief at 7-8), courts have recognized that "[b]ecause ERISA's definition of a pension plan is so broad, virtually any contract that provides for some type of deferred compensation will also establish a de facto pension plan, whether or not the parties intended to do so." Modzelewski v. Resolution Trust Corp., 14 F.3d 1374, 1377 (9th Cir. 1994).  In Deibler v. United Food and Commercial Workers' Local Union 23, 973 F.2d 206 (3d Cir. 1992), the Third Circuit reiterated what has become the accepted standard for evaluating whether a program that provides an employee benefit qualifies as an ERISA plan.  The Deibler panel noted that a "'plan, fund or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries,

3

the source of financing, and procedures for receiving benefits." Id. at 209.  As set forth in the

Opening Brief, a review of the Deferred Benefit Plan demonstrates that it is an employee benefit

plan under ERISA.

The Deferred Benefit Plan identifies the employee benefits (deferred

compensation), the beneficiaries (the shareholder doctors), the procedures for receipt of benefits,

including the terms and limitations on continued receipt of benefits (inter alia, non-competition

obligations, cost-of-living adjustments, and limitations on payments based on ROPA's annual

profitability) and the source of financing (ROPA's general assets).  See Exhibits B and C of the

Appendix to the Opening Brief.  Under applicable precedent, this is more than sufficient to

trigger coverage under ERISA.[1]

The only case relied on by Plaintiff in support of his contention that the Deferred

Benefit Plan may not be an ERISA plan, Manly v. Associates in Obstetrics and Gynecology,

P.A., No. Civ. A. 00C-049, 2001 WL 946489 (Del. Super. Ct. July 27, 2001)(a copy of this

unreported decision is attached hereto as Exhibit A), is inapposite.  Plaintiff contends that the

facts in Manly are factually similar to those of the instant case but that the Superior Court did not

dismiss the plaintiff's state law claims as preempted by ERISA.  Answering Brief at 15.

Although Plaintiff is correct that the court in Manly did not dismiss the plaintiff's state law

claims based on preemption, there is no indication that either party in Manly raised the question

---

[1]    The Defendants note that the Deferred Benefit Plan is not a one person retirement
agreement, see Complaint at ¶ 27, even though such agreements have been held to
constitute an ERISA plan. See Williams v. White, 927 F.2d 1540, 1545-46 (11th Cir.
1991)(holding that a plan covering a single employee subject to ERISA regulation).  At
the time of Plaintiff's retirement, and continuing today, the Deferred Benefit Plan covers
all shareholder doctors of ROPA.

of whether the plan at issue was an ERISA plan and, therefore, the fact that the Delaware Superior Court did not independently raise the issue is unremarkable. See id. at *1-10.

Finally, the Court should reject Plaintiff's contention that discovery and an evidentiary hearing are necessary for the Court to determine whether the Deferred Benefit Plan is an employee benefit plan subject to ERISA. See Answering Brief at 14-15. Plaintiff attached to the Complaint all of the documents necessary for the Court to conclude that the Deferred Benefit Plan is an ERISA plan; additional documentary evidence and/or testimony is wholly unnecessary and would only lead to a waste of the Court's and the parties' resources and time. As noted, the Deferred Benefit Plan identifies the benefits, the beneficiaries, the procedures for receipt of benefits, the terms and limitations on continued receipt of benefits, and the source of financing. Additional discovery and an evidentiary hearing will do nothing to aid the Court's determination that the Deferred Benefit Plan is an employee benefit plan under ERISA.[2]

Moreover, apart from the fact that the Deferred Benefit Plan is an ERISA plan, Plaintiff cannot avoid dismissal of his state law claims by asserting the state law claims in the alternative under Rule 8 of the Federal Rules of Civil Procedure ("FRCP"). As set forth in Pane v. RCA Corporation, 667 F. Supp. 168 (D.N.J. 1987), because "ERISA operates to pre-empt a plaintiff's state law claims, such preemption is mandatory. . . . *Therefore, plaintiff cannot use the rules allowing alternative pleading as a defense to defendant's motion to dismiss.*" Id. at 172 (emphasis added); see also Tappe v. Alliance Capital Mgmt L.P., 177 F.Supp.2d 176, 188 (S.D.N.Y. 2001)(rejecting plaintiff's argument that FRCP Rule 8 precluded dismissal of his state

---

[2]     Defendants also note that, Plaintiff fails to identify what document discovery or testimony would be probative of, or necessary to answer, the question of whether the Deferred Benefit Plan is an ERISA employee benefits plan. See Answering Brief at 14-15.

law claim because he brought it in the alternative to an ERISA claim. "Whether ERISA preempts [plaintiff's] state law claims does not depend on whether he brings an ERISA claim; it depends on whether his claims 'relate to' an employer's severance plan. Even if [plaintiff] had not brought an ERISA claim, the analysis would still be the same.").

As cited in the Opening Brief, numerous courts, including this Court, have held at the motion to dismiss stage that state law claims should be dismissed because they are preempted by ERISA. See Huss v. Green Spring Health Servs., Inc., 18 F. Supp. 2d 400, 402-06 (D. Del. 1998); Baskin Flaherty Elliott & Mannino, 788 F. Supp. 878, 879 (W.D. Pa. 1992); Pane, 667 F. Supp. at 171-72; Ercole v. Conective and Coventry Health Care of Delaware, Inc., 03-186, 2003 WL 21104926, at *1-3 (D. Del. May 15, 2003) (a copy of this unreported decision is attached hereto as Exhibit B); Alberts v. Indep. Blue Cross and Pennsylvania Blue Shield, No. Civ. A. 96-3926, 1996 WL 677512, at *1-2 (E.D. Pa. Nov. 22, 1996) (a copy of this unreported decision is attached hereto as Exhibit C). Counts I, III, and IV are for the recovery of benefits under an employee benefit plan subject to ERISA and, therefore, must be dismissed.

## II.  COUNT V, THE CIVIL CONSPIRACY CLAIM, IS PREEMPTED

In the Answering Brief, Plaintiff asserts that the Court should not dismiss Count V, a claim for common law civil conspiracy, because (i) he named the Defendant Doctors as individual defendants and (ii) he requests punitive damages for the Defendant Doctors' alleged bad faith conspiracy to deprive him of his deferred compensation benefits under the Deferred

Benefit Plan, a remedy not available under ERISA.    Answering Brief at 16-18.    Plaintiff's

arguments are contradicted by settled law and should be rejected by the Court.[3]

Plaintiff cites no case that supports his position that, simply by naming individual

defendants, a plaintiff asserting a state law claim, where the underlying conduct at issue cannot

be divorced from its connection to an employee benefit plan, can avoid ERISA's express

preemption provision. Here, the underlying conduct at issue in Claim V is Plaintiff's asserted

right to recover deferred compensation payments under the Deferred Benefit Plan, an employee

benefit plan subject to ERISA. See Complaint at ¶¶ 60 ("The Defendant Doctors, in their

individual capacities, have together engaged in a course of conduct that unlawfully deprived Dr.

Tilton of the benefits due to him pursuant to the Amended SREA and the DCA"), 61 ("The

Defendant Doctors have used the pretext of an alleged fiduciary breach to the deferred

compensation plan to aid and abet ROPA in reneging on its obligations to Dr. Tilton pursuant to

the express language of the Amended SREA and the DCA"), 63 ("The Defendant Doctors had no

real reason to breach Dr. Tilton's Amended SREA and DCA"), 64 ("The Defendant Doctors'

decision to have ROPA terminate the deferred compensation payments to Dr. Tilton was made in

bad faith").    Indeed, courts have repeatedly concluded that civil conspiracy claims,

---

[3]    As noted in the Opening Brief, numerous courts have held that state law civil conspiracy
claims, where the underlying conduct relates to the recovery of employee benefits under
an ERISA plan, are preempted by ERISA's express preemption provision. See Opening
Brief at 16-17 (citing Erwin v. U-Haul Int'l, Inc., No. Civ. A. 3:01-CV-2218-M, 2002
WL 265075, at *1, n.2 (N.D. Tex. Feb. 22, 2002) (a copy of this unreported decision is
attached hereto as Exhibit D); Christopher v. Mobil Oil Corp., 950 F.2d 1209, 1217 (5th
Cir. 1992); Denk v. Boeing Co., 885 F. Supp. 690, 694 (E.D. Pa. 1995); Alberts, 1996
WL 677512, at *1; see also McGowin v. Manpower Int'l, Inc., 363 F.3d 556, 559 (5th
Cir. 2004)(holding that plaintiff's common law conspiracy claim was preempted by
ERISA); McDonald v. Provident Indem. Life Ins. Co., 60 F.3d 234, 238 (5th Cir.
1995)(concluding that plaintiff's civil conspiracy claim was preempted by ERISA).

notwithstanding the fact that they were brought against individual defendants, are preempted by ERISA's preemption provision. See Sys. 99 Minority S'holders v. Robison, 953 F.2d 1388, 1992 WL 16801, at **5 (9th Cir. Feb. 4, 1992)(a copy of this unreported decision is attached hereto as Exhibit E)(holding that the plaintiff's state law claim for civil conspiracy against individual defendants was preempted by ERISA); York v. Ramsay Youth Servs. of Dothan, et al., 313 F. Supp. 2d 1275, 1278-80 (M.D. Ala. 2004)(holding that plaintiffs' claim for conspiracy against defendants, including the individual defendant employer, were preempted by ERISA); Argenbright v. Zix Corp., No. Civ. 3:04-CV-1061-H, 2005 WL 1421775, at *2 (N.D. Tex. June 14, 2005)(holding that the plaintiff's allegation that "the individual defendants conspired to deny Plaintiff benefits under an ERISA Plan" were dependant upon plaintiff's rights under an ERISA plan and, consequently, preempted)(a copy of this unreported decision is attached hereto as Exhibit F).

A plaintiff cannot plead around Congress' legislative directive that ERISA shall completely occupy the field of employee benefit plans. Courts have consistently held that "artful characterization of the action [does] not change the fact that plaintiffs' claims were based [on an ERISA violation]" and therefore are preempted. Huss, 18 F. Supp. 2d at 404 (citing Kuhl v. Lincoln Nat'l Health Plan of Kansas City, Inc., 999 F.2d 298, 303-04 (8th Cir. 1993)); Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1488 (7th Cir. 1996)(stating that "a plaintiff cannot avoid complete preemption . . . by artfully pleading a complaint so as to omit facts that indicate federal jurisdiction"). To permit Plaintiff to avoid preemption simply because he named the Defendant Doctors individually in the Complaint would eviscerate ERISA's objective of providing a uniform system to "eliminat[e] the threat of conflicting or inconsistent State and

local regulation of employee benefit plans." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983).

For this reason, the language of Section 514 of ERISA, the express preemption provision, is "'deliberately expansive, and designed to establish [employee benefit] plan regulation as exclusively a federal concern.'" Pugh v. Metro Life Ins. Co., 968 F. Supp. 178 (D. Del. 1997)(quoting Pilot Life, 481 U.S. at 46). It states, in pertinent part, that "the provisions of this subchapter . . . *shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan*[.]" 29 U.S.C. § 1144(a)(emphasis added). Under Section 514 of ERISA, Count V "relates to" an ERISA employee benefits plan and, therefore, is preempted.

In addition, Plaintiff's argument that Count V is not preempted because he has requested punitive damages, a remedy not available under ERISA, is specious. See Answering Brief at 18. "That ERISA does not provide the full range of remedies available under state law in no way undermines ERISA preemption." Tolton v. Am. Biodyne, 48 F.3d 937, 943 (6th Cir. 1985). As noted in the Opening Brief, punitive damages are not an available remedy under ERISA, see Opening Brief at 17 n. 3; this fact, however, in no way precludes preemption. To the contrary, as this Court stated in Huss v. Green Spring Health Services, Inc., 18 F. Supp. 2d 400 (D. Del. 1998), "the Court must respect Congress' intent to have the civil enforcement mechanism of ERISA be the exclusive remedy for such claims. . . . 'The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.'" Huss, 18 F. Supp. 2d at 408 (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987)).

Further, as noted in the Opening Brief, numerous courts have dismissed state law claims on preemption grounds notwithstanding the fact that the state law claims also sought punitive damages. See Pane, 868 F.2d at 635 (affirming the district court's decision (i) that the plaintiff's state law claims were preempted and (ii) that the request for punitive damages under the state law claims was not available under ERISA); Huss, 18 F. Supp. 2d at 406-08 (stating that punitive damages are not available under ERISA); Ercole, 2003 WL 21104926, at *2 (holding that in addition to the fact that the state law claims were preempted by ERISA, the punitive damages sought by the plaintiff's state law claims were not permitted by ERISA).

For these reasons, the Court should conclude that Count V of the Complaint is preempted by ERISA.

## III. COUNT II MUST BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

### A. The Absence of the Required Written Plan Procedures Does Not Excuse Plaintiff from Complying with a Requirement Regularly Mandated in ERISA Matters

It is settled federal law that the absence of a written plan document that complies with all of the specific requirements of ERISA does not take an employee benefit plan outside of ERISA's coverage. See Donavan v. Dillingham, 688 F.2d 1367, 1372 (11th Cir. 1982). As previously noted, an employee benefit plan subject to ERISA exists when the following can be ascertained: (i) the benefits; (ii) the beneficiaries; (iii) the procedures for the receipt of benefits; and (iv) the source of financing. Here, the Deferred Benefit Plan is an employee benefit plan subject to ERISA. Accordingly, as an employee benefit plan subject to ERISA, the Deferred Benefit Plan should contain administrative appeal procedures pursuant to 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1.

The Deferred Benefit Plan was established upon the execution of the SREA on July 7, 2000. At that time, Plaintiff was the President of ROPA. See Exhibit A of the Appendix to the Opening Brief. As the senior officer of ROPA and the person who executed the document that established the Deferred Benefit Plan on behalf of ROPA, Plaintiff was the individual responsible for establishing a plan document that complied with the statutory and regulatory requirements of ERISA, including the establishment of administrative appeal procedures.[4]

It would be wholly inequitable for the Court to now excuse Plaintiff from exhausting his administrative remedies, a condition courts routinely impose on all other ERISA plan participants and beneficiaries, as a result of a technical deficiency for which the Plaintiff, as the President of ROPA at the time of the execution of the Deferred Benefit Plan documents, was ultimately responsible.

When ROPA sent the January 13, 2005, letter to Plaintiff, notifying him of the termination of deferred compensation payments under the Deferred Benefit Plan, ROPA provided a detailed explanation of the available administrative review procedures in good faith compliance with ERISA statutory and related regulatory requirements. See Exhibit D to the Complaint. As the Eighth Circuit stated in Kinkead v. Soutwestern Bell Corporation Sickness & Accident Disability Benefit Plan, 111 F.3d 67 (8th Cir. 1997):

---

[4]     Pursuant to ERISA, in the absence of a specific designation of a plan administrator, the "Employer" shall be considered the plan administrator. See 29 U.S.C. § 1002(16)(A)-(B). ERISA defines the term "employer" to include any person acting directly as an employer or indirectly in the interest of an employer in relation to an employee benefit plan. 29 U.S.C. § 1002(5). This definition is certainly broad enough to include Plaintiff, who was President of ROPA at the time of the creation of the SREA and who executed the SREA on behalf of ROPA.

11

> Given the practical reasons favoring exhaustion, claimants with notice of an available review procedure should know that they must take advantage of that procedure if they wish to bring wrongful benefit denials to court.

Id. at 69. In the instant case, ROPA's January 13, 2005, letter to Plaintiff sufficiently apprised Plaintiff of his ERISA mandated right to an administrative review of his claim. Accordingly, the Court should dismiss Count II of the Complaint and require Plaintiff to appeal the termination of the deferred compensation benefits according to the available administrative review procedures.

B.    The Court Should Not Excuse Plaintiff from Exhausting the Available Administrative Remedies by Reason of "Futility"

Although "futility" is a recognized exception to the general rule requiring a claimant to exhaust his administrative remedies, Plaintiff has not met his burden in establishing that an administrative review of his claim would be futile. Courts require a clear and positive showing of futility before they will suspend or excuse the exhaustion requirement. See e.g., Springer v. Wal-Mart Assocs.' Group Health Plan, 908 F.2d 897, 901 (11th Cir. 1990)(quoting Makar v. Health Care Corp., 872 F.2d 80, 83 (4th Cir. 1989)).

Plaintiff asserts that because ROPA, the Deferred Benefit Plan administrator and the party that issued the initial denial of Plaintiff's claim, is also the party who would hear any appeal, futility is per se established. Answering Brief at 9. What Plaintiff fails to mention, however, is that the per se rule he requests this Court to adopt has been rejected by the majority of courts that have faced this issue.

When presented with arguments that an administrative appeal of a claim denial would be futile because of an identity of interest between the entity responsible for the initial claim denial and the entity that will review an appeal, courts have repeatedly indicated that such

12

a shared interest does not alone establish futility.  See, e.g., Springer, 908 F.2d 897 (11th Cir. 1990); Denton v. First Nat'l Bank of Waco, Texas, 765 F.2d 1295, 1300 (5th Cir. 1985)(stating that futility is not established where review committee was composed of the same members that earlier turned down claimant's request); Dale v. Chicago Tribune Co., 797 F.2d 458 (7th Cir. 1986)(stating that the absence of a neutral arbitrator in the administration of initial ERISA procedures does not, by itself, render the exhaustion of such procedures futile).

Indeed, as noted in Amato v. Bernard, 618 F.2d 559 (9th Cir. 1980), ERISA § 503 (29 U.S.C. § 1133) specifically contemplates internal administration of claim review procedures. Id. at 569.  If it were possible to establish futility merely by claiming that the party reviewing the claim had previously taken a position adverse to the claimant, futility would be established in nearly every case and the federal policy behind exhaustion would be abrogated in its entirety. See Springer, 908 F.2d at 901 ("If futility were established by the mere fact that the plan administrator who makes initial benefits decisions and the trustees who review appeals share common interests or affiliations, the exhaustion of administrative remedies would be excused in virtually every case."); Denton, 765 F.2d at 1303 ("If [plaintiff's] view of exhaustion were to prevail, no plaintiff who knew how to claim 'bitterness or hostility' on the part of the Plan's review committee could be compelled to submit his claim for administrative review . . . . result[ing in the] evasion of the congressionally mandated administrative process.")(citing Amato).

The Plaintiff cites Alaire v. Amoco Corporation, No. 90 C 611, 1990 WL 70486 (N.D. Ill. 1990)(a copy of this unreported decision is attached hereto as Exhibit G), for the proposition that futility is established when the party reviewing a claim denial is the same party that made the initial claim determination.  However, more significant to the finding of futility in

13

that case was that the reviewing party had "taken the flat position that [an entire class of multiple] plaintiffs were not even covered by the [severance policy at issue]." Id. at *2. In this case, ROPA has not established any uniform policy denying claims. In contrast to Amoco, Plaintiff's claim was an issue of first impression to the Deferred Benefit Plan administrator and affected only Plaintiff. To say that ROPA is incapable of fairly considering all of the evidence that Plaintiff might present at an administrative hearing is to impugn, without testing it, the validity of the administrative review process clearly established and required by federal legislation.[5]

Finally, the Plaintiff cites Kriner v. GTE Products Corporation, No. 1:CV-89-907, 1990 WL 597393, at *3 (M.D. Pa. 1990), as a case in which a federal district court excused exhaustion based on futility because the entity reviewing the appeal was the same entity making the initial decision to deny plaintiff's claim. It should be noted, however, that the Kriner court cited no authority for its conclusion that this identity of interest alone is sufficient to establish futility. See id. at *3 (a copy of this unreported decision is attached hereto as Exhibit H). Indeed, the Kriner court relied on the Ninth Circuit's decision in Amato for the proposition that it may excuse exhaustion if it would be futile, see id., yet failed to note the Amato court's acknowledgment that "[t]he internal administration of such procedures is the very thing contemplated by section 503 of ERISA[.]" Amato, 618 F.2d at 569. The Kriner decision is in

---

[5]    The Amoco court also noted numerous deficiencies by the plan administrator not present here, such as entirely ignoring plaintiffs' attorneys' demand letter and follow-up letter without a response in violation of the plan's procedures, and noted that excusal of the exhaustion requirement was based on a consideration of all of the circumstances in that case. Id. at *1-2

direct conflict with the great weight of authority regarding establishment of futility and should not persuade the Court that Plaintiff has demonstrated futility in the instant case.

In sum, Plaintiff has failed to establish a clear and positive showing of futility. Plaintiff's bare statement that futility is established simply because ROPA would review the appeal of the denial of the deferred compensation benefits is contrary to the majority of cases that have addressed this issue and, if accepted by the Court, would completely undermine the federal policy requiring exhaustion of administrative remedies.

C.     The January 13, 2005 Letter from ROPA to Plaintiff Sufficiently Notified Plaintiff of the Basis for the Termination of the Deferred Compensation Payments and the Availability of Administrative Review of his Claim

Plaintiff also argues (Answering Brief at 11-14) that he should be excused from exhausting the administrative remedies available to him based on an alleged deficiency in the letter notice of denial ROPA sent to Plaintiff dated January 13, 2005 (the "Notice"). See Exhibit D to the Complaint. Plaintiff argues that the Notice did not (i) provide him with an adequate explanation of the reason for the termination of the deferred compensation payments under 29 U.S.C. § 1133(1) or (ii) comply with the Department of Labor's regulations regarding required content in a notification of benefit determination pursuant to 29 C.F.R. § 2560.503-1. Plaintiff's arguments are without merit. The Notice clearly informed Plaintiff of the basis for the denial and the availability of the administrative review procedure. This is all that was necessary to satisfy ROPA's obligations to provide Plaintiff with notice of the termination of his deferred benefit payments.

Beginning with the content of the Notice, Plaintiff argues that the Notice was deficient because it did not reference any provision of the Deferred Compensation Plan that was

breached or contain any description of what additional materials or information Plaintiff could provide to ROPA in order to reinstate the payment of his deferred compensation payments. See Answering Brief at 13. The reason the Notice did not cite to specific plan provisions is simple, no specific provision was relevant to the termination of Plaintiff's deferred compensation benefits. The denial of Plaintiff's claim was not based on an ineligibility of benefits under the Deferred Benefit Plan documents but rather based on the unenforceability of the Plan due to Plaintiff's breach of fiduciary duty to ROPA and, as a result, the Deferred Benefit Plan. Further, the issue of what documentation was necessary for Plaintiff to perfect his claim was not discussed in the Notice because the denial was not based on a lack of documentation but rather Plaintiff's breach of fiduciary duty that led to ROPA's and the Deferred Benefit Plan's injury.

Next, the Notice satisfied the requirements of 29 U.S.C. § 1133(1). The Notice provided Plaintiff with the precise reason for the termination of the deferred compensation payments, including a description of the circumstances that led to the denial. 29 U.S.C. § 1131(1) requires that a plan administrator "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." Courts have rejected exacting compliance with the notice requirements of ERISA. "Although the applicable regulations are specific in pronouncing the requirements, strict compliance is not mandated." Tolle v. Carroll Touch, Inc., 23 F.3d 174, 180 (7th Cir. 1994)(citation omitted). Further, "when claim communications as a whole are sufficient to fulfill the purposes of Section 1133 the claim decision will be upheld even if a particular communication does not meet those requirements." Kent v. United of Omaha Life Ins. Co., 96 F.3d 803, 807 (6th Cir. 1996)(citations omitted). In the instant case, the Notice provided Plaintiff with "adequate

16

notice" of the basis for the termination of the deferred benefit payments in terms that any layperson, and certainly Plaintiff, a sophisticated professional who participated in the creation of the Deferred Benefit Plan, could understand.

The Notice states that "ROPA has determined . . . that your participation in the amendment of the terms of the Deferred Compensation Plan to substantially increase benefits owed to you . . . in February 2001 constitutes a breach of your fiduciary duty to the Deferred Compensation Plan." The Notice informed Plaintiff of the precise actions that led to the termination of the deferred compensation payments, the date of the occurrence, and the reason why his amendment of the Deferred Compensation Plan required a termination of payments. Under the circumstances, it is unfathomable that the Notice did not provide Plaintiff with "adequate notice" of the basis for the termination of the deferred compensation payments.

Plaintiff appears to argue that ROPA was required to do more than provide the specific reason for the termination of the deferred benefit payments and was required under ERISA to provide him with the rationale behind its decision. Answering Brief at 12-13. Courts, however, have rejected this interpretation of 29 U.S.C. § 1133. In Gallo v. Amoco Corp., 102 F.3d 918 (7th Cir. 1996), the Seventh Circuit dismissed a plaintiff's argument that a denial letter was required to include more than expressly required by 29 U.S.C. § 1133. The Gallo court stated that although the plan "administrator must give the 'specific reasons' for [a claim] denial, . . . that is not the same thing as the reasoning behind the reasons." Id. at 922. "Reasoning, such as 'the interpretative process that generated the reasons for the denial,' is not required in the denial letter." Adkins v. Holland, 216 F. Supp. 2d 576, 579 (S.D. W.Va. 2002)(quoting Gallo). The reason for the denial is sufficient as it enables a claimant to formulate a challenge to the denial. Gallo, 102 F.3d at 922. In this case, the Notice provided Plaintiff with the precise

17

reasons for the termination of the deferred compensation benefits. Under applicable precedent, this was sufficient to satisfy 29 U.S.C. § 1133.

Notices providing significantly less information than the Notice in this case have been held to satisfy the requirements of 29 U.S.C. § 1133. In <u>Murphy v. Wal-Mart Associates' Group Health Plan</u>, 928 F. Supp. 700 (E.D. Tex. 1996), the court held that a notice's mere statement that the claim was denied because it was "'determined to be not medically appropriate at this time" was sufficient to satisfy the notice requirements of ERISA. <u>Id</u>. at 707. The Murphy court noted that although the notice should have provided the plaintiff with more detail, the explanation given was sufficient to satisfy the statutory obligations of 29 U.S.C. § 1133. <u>Id</u>.

In contrast, in <u>Garred v. General American Life Ins. Co.</u>, 774 F. Supp. 1190 (W.D. Ark. 1991), the court concluded that a form letter denying benefits was insufficient to provide a claimant with notice. <u>Id</u>. at 1200. In <u>Garred</u>, the defendant's form letter stated only, "Please be advised that the charges submitted for psych. are in connection with services which are not covered by the master contract." The form letter did not provide any specifics regarding the denial of the plaintiff's claim or how to appeal the initial claim denial. Accordingly, the court found that the notice was "woefully inadequate." <u>Id</u>. (citations omitted).

In the instant case, in contrast to <u>Garred</u>, the Notice provided Plaintiff with the precise reason for the termination of his benefits, i.e. Plaintiff's participation in amending the Deferred Benefit Plan to substantially increase his benefits shortly before his retirement to the detriment of ROPA and the Deferred Benefit Plan. The Notice also provided Plaintiff with a detailed explanation of the administrative review procedures. On these facts, the Notice provided Plaintiff with adequate notice of the reasons for the termination of his benefits under 29

U.S.C. § 1133 and, consequently, Plaintiff should not be excused from exhaustion of administrative remedies available under the Deferred Benefit Plan.

For these reasons, the Court should dismiss Count II of the Complaint for failure to exhaust administrative procedures.

<u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss Counts I, III-V of the Complaint as preempted by ERISA. Further, the Court should dismiss Count II of the Complaint because Plaintiff has failed to exhaust the administrative remedies available under the Deferred Benefit Plan.

WHEREFORE, the Defendants request that the Court enter an order dismissing the Complaint.

Date:   August 5, 2005
        Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL

William H. Sudell, Jr. (No. 463)
Curtis S. Miller (No. 4583)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

Counsel for Defendants Radiation Oncologists, P.A.,
Viroon Donavanik, M.D., Michael F. Dzeda, M.D.,
Christopher Koprowski, M.D., Adam Raben, M.D., Sunjay
Shah, M.D., and Michael D. Sorensen, M.D.

475346