# EXHIBIT G

Case 1:05-cv-00251-GMS    Document 17-8    Filed 08/05/2005    Page 1 of 4

**Westlaw.**

Not Reported in F.Supp.                                                                 Page 1
Not Reported in F.Supp., 1990 WL 70486
**(Cite as: Not Reported in F.Supp.)**

H
Not Reported in F.Supp., 1990 WL 70486
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
Joseph ALAIRE, et al., Plaintiffs,
v.
AMOCO CORPORATION, Defendant.
**No. 90 C 611.**

May 7, 1990.

*MEMORANDUM OPINION AND ORDER*

SHADUR, District Judge.
*1 Amoco Corporation ("Amoco") has moved to dismiss, on grounds of nonexhaustion of internal plan procedures, the claims of all plaintiffs in this action-16 of Amoco's ex-employees-for severance benefits under Amoco's Service Allowance Policy (the "Policy"). FN1 For the reasons stated in this memorandum opinion and order, Amoco's nonexhaustion defense is rejected and its motion to dismiss on that ground is denied.

*Facts* FN2

All plaintiffs were employees of Amoco's wholly-owned subsidiary Amoco Oil Company, FN3 who were notified of their impending termination November 12, 1984, put in their last day at work later that month and were actually terminated effective January 1, 1985. At that time Amoco had the Policy in effect-and the Policy described its own purpose as "to provide severance allowances for employees whose services are permanently terminated for causes which are no fault of the employee involved." FN4

Amoco Mem. 4-5 is reasonably candid about the absence of any advice to plaintiffs about the existence or nature of the asserted internal claims procedure that it now says was not exhausted:

In the present case, Plaintiffs admittedly were not told about the claims procedure while they were employed by Amoco because they were not covered by the Policy.

And when on June 23, 1988 plaintiffs' attorneys sent a demand letter to Amoco on behalf of all plaintiffs, and again when the same attorneys sent a January 26, 1989 follow-up letter, Amoco ignored them entirely-it did not even respond to either demand. On that score Amoco Mem. 5 continues:

In any event, Amoco readily admits that it did not respond to Mr. Wilson's June 23, 1988 letter (or a follow-up letter) and, accordingly, may not have complied with its own procedure.

*Exhaustion*

*Kross v. Western Electric Co.,* 701 F.Supp. 1238, 1244 (7th Cir.1983) teaches that given ERISA's statutory silence "as to whether exhaustion of administrative remedies is a prerequisite to bringing such a civil action [to redress ERISA violations]," it necessarily follows that "application of the exhaustion doctrine in ERISA cases by requiring a claimant to exhaust administrative remedies prior to bringing suit is a matter within the discretion of the trial court." During that same year, in *Lieske v. Morlock,* 570 F.Supp. 1426, 1429 (N.D.Ill.1983) (citations omitted) this Court's colleague Honorable Nicholas Bua followed his citation to *Kross* with this accurate statement of two considerations that bear upon the exercise of that discretion:

However, two exceptions to the exhaustion requirement exist. First, exhaustion will be excused when resort to such procedures would be futile, and second, the exhaustion requirement is excused when a claimant is wrongfully denied

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 2

Not Reported in F.Supp., 1990 WL 70486
**(Cite as: Not Reported in F.Supp.)**

meaningful access to administrative procedures. FN5

And since that time, in the course of affirming a decision by this Court dealing in part with an ERISA claim, *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 466 (7th Cir.1986) has reconfirmed both the broad scope of discretion given district courts in applying the administrative exhaustion doctrine (citing *Kross*) and the existence of the recognized futility exception to the exhaustion doctrine. FN6

*2 As *Lieske* suggests, the law does not compel administrative exhaustion when it would be a meaningless formality, a real exercise in futility. Here Amoco itself is the plan administrator, and Amoco has taken the flat position that plaintiffs are not even covered by the Policy and are therefore not entitled to the benefits they claim. It would involve nothing more than a charade if plaintiffs were forced to jump through an extra hoop only to obtain the same statement of rejection that they have already received via Amoco's Answer to their Complaint.

*Conclusion*

Exhaustion of administrative remedies as a prerequisite to invoking the judicial process may often represent a desirable requirement as a matter of policy-it is intended to assure that courts are not forced to deal with claims that may be fully disposed of without legal action, and also to provide courts with the benefit of the plan administrator's interpretations of a plan's administrative provisions in cases that do end up in litigation. FN7 But under all the circumstances here, Amoco surely has not properly established a justification for requiring exhaustion as a prerequisite to this action. Its affirmative defense in that respect is rejected, and its Rule 12(b)(6) motion to dismiss this action on nonexhaustion grounds is denied.

FN1. Amoco also contends that the Policy did not cover plaintiffs' termination in any event. That issue is not nearly ripe for disposition and will not be touched upon in this opinion.

FN2. Because Amoco's motion is predicated on Fed.R.Civ.P. ("Rule") 12(b)(6), the current ruling is bounded by the matters set out in plaintiffs' Complaint. As the text will reflect, however, this Court has taken into account some of the documents referred to in the parties' memoranda to avoid the need to replow the same field when those documents (which are really undisputed) properly find their way into the record.

FN3. Amoco Mem. 3 has waived any potential defenses based on the identity of the corporation involved and the fact that this action is brought against Amoco rather than its subsidiary. This opinion will therefore use "Amoco" indiscriminately to refer to both the parent and the subsidiary corporation.

FN4. All plaintiffs were terminated as a result of a contraction of Amoco's operations, not because of any fault on their part.

FN5. [Footnote by this Court] Plaintiffs' counsel contends that this case fits both of those exceptions. That certainly appears likely, but given the unquestionable applicability of the futility exception it is unnecessary to decide on the second exception as well.

FN6. Amoco cites *Grossmuller v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, Local 813,* 715 F.2d 853, 859 (3d Cir.1983) for the proposition that exhaustion of administrative remedies is the preferred course of action even where the administrator has been guilty of procedural violations. Whether or not that would strike a responsive chord in our own Court of Appeals, in this instance the further discussion in the text reflects that the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 3

Not Reported in F.Supp., 1990 WL 70486
**(Cite as: Not Reported in F.Supp.)**

exercise of sound discretion does *not* call for such a result here.

FN7. There is of course one other element of an ERISA claim that may be impacted by such an administrative interpretation. That has to do with the legal standard by which a denial of benefits is to be reviewed when the case then ends up before a court (see *Firestone Tire & Rubber Co. v. Bruch,* 109 S.Ct. 948, 953-56 (1989) and the extensive discussion of the standard-of-review issue by our Court of Appeals in *Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund,* No. 89-1822, slip op. at 6-10 (7th Cir. Apr. 27, 1990)).

N.D.Ill.,1990.
Alaire v. Amoco Corp.
Not Reported in F.Supp., 1990 WL 70486

Briefs and Other Related Documents (Back to top)

• 1:90CV00611 (Docket) (Feb. 05, 1990)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.