# EXHIBIT H

Case 1:05-cv-00251-GMS    Document 17-9    Filed 08/05/2005    Page 1 of 5

Westlaw.

Not Reported in F.Supp.                                                                                       Page 1

Not Reported in F.Supp., 1990 WL 597393
**(Cite as: Not Reported in F.Supp.)**

C
Not Reported in F.Supp., 1990 WL 597393
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
 United States District Court, M.D. Pennsylvania.
 Marie J. KRINER, Individually and on behalf of all those similarly situated, Plaintiffs
v.
GTE PRODUCTS CORP., Defendant.
**No. 1:CV-89-907.**

July 10, 1990.

*OPINION*

MUIR, District Judge.
*1 This case is on the September, 1990, trial list. On May 17, 1989, Plaintiff Marie J. Kriner initiated this action by filing a complaint seeking individual and class relief in the Court of Common Pleas of Lycoming County against Defendant GTE Products Corporation (GTE). On June 14, 1989, GTE filed a notice of removal of the case to this Court. GTE claimed that the complaint alleged an entitlement to benefits under a severance pay plan which is an employee welfare benefit plan as defined in the Employee Retirement Income and Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, et seq. (1985). By order dated June 27, 1990, the Court determined that this case would not be maintained as a class action.

Both parties filed motions for summary judgment and briefs on the motions. By order dated April 25, 1990, the Court directed the parties to file supplemental briefs on the issue of whether Kriner had exhausted her administrative remedies or why she was not required to do so. Kriner filed a supplemental brief on May 2, 1990. GTE filed a supplemental brief in response to Kriner's brief on May 11, 1990. Kriner was entitled to file a supplemental reply brief by May 18, 1990, but elected not to file one.

Kriner states that she was an employee at the GTE plant in Montoursville, Pennsylvania, and that GTE laid off her and approximately 80 other employees on or about November 25, 1988. Kriner alleges that GTE formed a contract with her and the other employees in 1981 when it established a severance pay policy for hourly employees in the event of a plant closing. According to Kriner in early November, 1988, before GTE laid her off and laid off the other employees, GTE distributed an Employee Handbook which summarized the procedures established in 1981. Kriner contends that after GTE laid her off it established a new procedure regarding severance pay on January 6, 1989, but did not communicate the procedure to the employees. Kriner states that GTE approved the closing of the Montoursville plant on January 31, 1989, and notified employees on or about February 6, 1989, that it would close the plant on or about August 9, 1989. Kriner further states that when she and the other employees who were laid off on November 25, 1988, learned that GTE intended to close the plant, they contacted GTE to receive the severance pay which they thought they were entitled to under the policy in effect at the time of their lay-off. Kriner states that GTE denied her request for severance pay and claimed that she was ineligible for severance pay under the policy which was in effect as of January 6, 1989. Kriner seeks as relief severance pay, interest, and costs.

GTE denies that in 1981 it announced a procedure for hourly employees regarding severance pay in the event of a plant closing. GTE contends that the 1981 policy was part of a policy manual which was not distributed generally to employees and was distributed only to certain management and administrative personnel. GTE disputes that the policy regarding severance pay which was effective January 6, 1989, was not communicated to Kriner.
GTE argues that the Employee Handbook is not an employment contract and is only provided for the purpose of providing general information to employees. According to GTE, the official policy

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                  Page 2
Not Reported in F.Supp., 1990 WL 597393
**(Cite as: Not Reported in F.Supp.)**

regarding severance pay in the event of a plant closing provides that employees who are laid off on the date that GTE announces a six-month notice of a plant closing are not eligible for benefits. Because Kriner and the other employees were laid off when the plant closing was announced, GTE claims that they are not entitled to severance pay.

*2 Summary judgment is appropriate only when there is no genuine issue of material fact which is unresolved and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment is an extreme remedy and should not be granted when there is a disagreement about the facts or the proper inferences which a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81, 84 (3d Cir.1982). "When a motion for summary judgment is made and supported as provided in ... [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. ..." Fed.R.Civ.P. 56(e). The adverse party must show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial. *Id.* Because summary judgment is a severe remedy, the Court must resolve any doubt about the existence of genuine issues of fact against the moving party. *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981).

The United States Supreme Court has stated that in motions for summary judgment a material fact is one which might affect the outcome of the suit under relevant substantive law. *See Anderson v. Liberty Lobby, Inc.,* 106 S.Ct. 2505, 2510 (1986). The Supreme Court also stated in *Anderson* that a dispute about a material fact is "genuine" if "the evidence is such that a reasonable party could return a verdict for the non-moving party." *Id.* at 2510. " Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation,* 106 S.Ct. 1348, 1356 (1986).

In cases where cross-motions for summary judgment have been filed, each side essentially contends that no issue of material fact exists from its particular point of view. The Court should consider each motion for summary judgment on its own merits. *Mingus Constructors, Inc. v. U.S.,* 812 F.2d 1387, 1391 (Fed.Cir.1987). Because each side is moving for summary judgment, each side bears the burden of establishing a lack of genuine issues of material fact. "Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination [of] whether genuine issues of material fact exist." *Rains v. Cascade Industries, Inc.,* 402 F.2d 241, 245 (3d Cir.1968); *see also* 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2720 at pp. 16-19 (1983). In light of these principles, we will address Kriner's motion first.

ERISA applies to any "employee benefit plan" which is established by an employer engaged in commerce or industry. 29 U.S.C. § 1003(a)(1). The term "employee benefit plan" encompasses the term "employee welfare benefit plan." 29 U.S.C. § 1002(3). An employer's policy of providing benefits to employees upon termination of employment in the form of severance pay is an " employee welfare benefit plan" within the meaning of ERISA. *Ulmer,* 884 F.2d at 99; *Pane v. RCA Corp.,* 868 F.2d 631, 635 (3d Cir.1989). The Court of Appeals has determined that the interpretation of a written severance pay plan presents a question of law for the Court. *Ulmer v. Harsco Corp.,* 884 F.2d 98, 102 (3d Cir.1989). Because ERISA preempts any state laws relating to the enforceability or lack of enforceability of an employee welfare benefit plan, *see* 29 U.S.C. § 1144(a) , *Pane,* 868 F.2d at 635, the Court is of the view that Kriner is not entitled to judgment as a matter of law on her state law claims.

*3 ERISA requires that an employee benefit plan provide a beneficiary whose claim for benefits has been denied with adequate notice in writing of the specific reasons for such denial and:
  (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                Page 3
Not Reported in F.Supp., 1990 WL 597393
**(Cite as: Not Reported in F.Supp.)**

appropriate named fiduciary of the decision denying the claim.
29 U.S.C. § 1133. This Court should apply a *de novo* standard on review to determine whether GTE's denial of severance pay to Kriner was in accordance with the terms of the plan unless the plan administrator or fiduciary has discretionary authority to determine eligibility for benefits. *Firestone Tire & Rubber Company v. Bruch,* 109 S.Ct. 948 (1989).

The Court's use of a *de novo* standard of review, however, presumes that Kriner has had an administrative review of her claim in accordance with Section 1133. GTE submitted an affidavit signed by Gary Egge, the Director of Employee/Labor Relations, and a copy of a letter which Egge states "was sent to each employee who was on lay off on the date of notification of the plant closing and who was not paid plant closing separation pay." With respect to severance pay this letter states:
> Given the fact that the plant will be closing, you will be permanently separated from GTE on *June 1, 1989* and not subject to recall. Since your layoff was prior to the closure announcement, you are not eligible for GTE Plant Closing benefits.

There is no evidence in this letter or elsewhere in the record that GTE conducted a "full and fair review" of Kriner's claim for severance pay.

Normally, we would remand this matter to the trustee for the appropriate review because federal courts generally do not entertain an action under ERISA to recover benefits when the party bringing the action has failed to exhaust administrative remedies. *Wolf v. National Shopmen Pension Fund,* 728 F.2d 182, 185 (3d Cir.1984) ; *Kross v. Western Electric Co., Inc.,* 701 F.2d 1238 (7th Cir.1983). The Court, however, may excuse a claimant seeking benefits under an ERISA plan from exhausting administrative remedies where resort to such administrative remedies would be futile or the remedy would be inadequate. *Amato v. Bernard,* 618 F.2d 559, 568 (9th Cir.1980).
Because GTE is the plan administrator and because GTE has stated that Kriner is not entitled to benefits, the Court is of the view that requiring Kriner to submit her claim to GTE for

administrative review is futile.

GTE states in its motion for summary judgment that Kriner's entitlement to severance pay is governed by GTE's policy dated January 6, 1989. The Employee Handbook incorporates by reference the policy dated January 6, 1989. In conducting a *de novo* review of GTE's decision to deny Kriner benefits, the Court should interpret the plan documents and other evidence under ordinary principles of contract and trust law. *Firestone Tire and Rubber Company v. Bruch,* 109 S.Ct. 948 (1989). A principle of contract interpretation is that the best evidence of the intent of the parties is the plain language in the written agreement. *Brokers Title Company, Inc. v. St. Paul Fire & Marine Insurance Company,* 610 F.2d 1174, 1181 (3d Cir.1979).

*4 The policy dated January 6, 1989, was in effect at the time that GTE announced the plant closing and states, inter alia, as follows:
> 3.0 *Benefit Eligibility*
> Employees eligible for plant closing benefits include all active full time employees who are separated from employment in response to business needs on or after the date of the six month notice ("eligible employees"). One year of accredited service is required in either situation. Employees on layoff on the date of the six month notice will not be eligible for benefits.

The parties do not dispute that on or about February 6, 1989, GTE gave Kriner the six-month notice that the plant would be closed on or about August 9, 1989. Because the policy states that employees on lay-off on the date of the six-month notice will not be eligible for benefits and because Kriner was on lay-off on February 6, 1989, Kriner was not entitled to plant closing benefits under the policy dated January 6, 1989.

Kriner argues that GTE was not permitted to change the severance pay benefits once Kriner's right to those benefits vested. ERISA, however, does not impose on employee welfare benefit plans the strict vesting requirements which ERISA imposes on pension benefits. *Young v. Standard Oil (Indiana),* 849 F.2d 1039, 1045 (7th Cir.), *cert. denied,* 109 S.Ct. 529 (1988). ERISA defines an accrued

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.         Page 4
Not Reported in F.Supp., 1990 WL 597393
**(Cite as: Not Reported in F.Supp.)**

benefit as an "annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23). Accrued benefits under ERISA do not include severance payments. *Sutton v. Weirton Steel Division of National Steel Corp.,* 724 F.2d 406, 410 (4th Cir.1983), *cert. denied,* 104 S.Ct. 2387 (1984). Thus, GTE was free to amend its severance pay policy to exclude employees on layoff on the date of the six-month notice even though doing so was in GTE's interest.

Kriner was also not entitled to severance benefits because when an employer amends a severance pay plan to change the class of persons entitled to benefits or to reduce the level of benefits a determination of whether an employee is entitled to benefits is based on the plan in effect on the date when the events occurred which initiated the right to severance pay. *Brown v. AMPCO-Pittsburgh Corp.,* 876 F.2d 546, 551 (6th Cir.1989). When Kriner was laid off on November 25, 1988, GTE had not closed the Montoursville plant or announced the plant closing. GTE amended the severance pay plan before it announced the plant closing and when it did announce the plant closing on February 6, 1989, the new policy dated January 6, 1989, was in effect. Thus, the January 6, 1989, policy applied to Kriner and under that policy she was ineligible for benefits.

Kriner claims that GTE did not notify her that it had enacted the policy dated January 6, 1989. Regardless of whether GTE notified Kriner the January 6, 1989, policy existed and had legal effect. *Young,* 849 F.2d at 1045-47. A violation of procedural requirements under ERISA such as the disclosure of plan provisions does not generally provide a reason to grant participants substantive relief. *Ashenbaugh v. Crucible, Inc.,* 854 F.2d 1516, 1532 (3d Cir.1988), *cert. denied,* 109 S.Ct. 3155, *reh. denied,* 110 S.Ct. 12 (1989). While understandably this may seem unfair to a loyal employee of many years standing who has only recently been laid off, GTE was within its legal rights in adopting the new policy on January 6, 1989. The Court will grant GTE's motion for summary judgment.

\*5 An appropriate order will be entered.

*ORDER*

1. Kriner's motion for summary judgment is denied.

2. GTE's motion for summary judgment is granted.

3. This case is dismissed.

4. The Clerk of Court will close the file in this case.

M.D.Pa.,1990.
Kriner v. GTE Products Corp.
Not Reported in F.Supp., 1990 WL 597393

Briefs and Other Related Documents (Back to top)

• 1:89cv00907 (Docket) (Jun. 14, 1989)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.