IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DONALD C. TILTON, D.O. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 05-0251-SLR |
| | ) | |
| RADIATION ONCOLOGISTS, P.A., | ) | |
| VIROON DONAVANIK, M.D., | ) | |
| MICHAEL F. DZEDA, M.D., | ) | |
| CHRISTOPHER KOPROWSKI, M.D. | ) | |
| ADAM RABEN, M.D., SUNJAY | ) | |
| SHAH, M.D., and MICHAEL D. | ) | |
| SORENSEN, M.D. | ) | |
| | ) | |
| Defendants. | ) | |

Robert A. Penza, Esquire and Peter M. Sweeney, Esquire of Gordon, Fournaris & Mammarella, Wilmington, Delaware.  Counsel for Plaintiffs.

William H. Sudell, Jr., Esquire and Curtis S. Miller, Esquire of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware.  Counsel for Defendants.

MEMORANDUM OPINION

Dated: January 18, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

On April 27, 2005, plaintiff Donald C. Tilton, D.O. ("plaintiff") filed a complaint against Radiation Oncologists, P.A., Viroon Donavanik, M.D., Michael F. Dzeda, M.D., Christopher Koprowski, M.D., Adam Raben, M.D., Sunjay Shah, M.D. and Michael Sorensen, M.D. (collectively called "defendants"). (D.I. 1) Plaintiff claims payment of deferred compensation benefits related to his employment agreement and separate deferred compensation agreements pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. Plaintiff further raises claims based on breach of contract, anticipatory repudiation, violation of the Delaware Wage Payment and Collection Act ("DWPCA") and civil conspiracy. (D.I. 1) Before the court is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 10)

This court has jurisdiction pursuant to 29 U.S.C. §§ 1331 and 1367.

## II. BACKGROUND

Plaintiff is a former shareholder and employee of defendant Radiation Oncologists, P.A. ("ROPA"). (D.I. 1 at ¶ 14) Defendant ROPA is a professional medical association that provides services in the field of radiation oncology. (Id. at ¶ 13) Plaintiff was employed as a radiation oncologist with defendant ROPA at all times between the date of its

incorporation, on November 29, 1976, until December 31, 2002, when he retired. (Id. at ¶ 14) Defendants Viroon Donavanik, M.D., Michael F. Dzeda, M.D., Christopher Koprowski, M.D., Adam Raben, M.D., Sunjay Shah, M.D. and Michael D. Sorensen, M.D. (collectively called "defendant doctors"), are present employees of defendant ROPA. (Id. at ¶ 11)

On July 7, 2000, plaintiff entered into the Radiation Oncologists, P.A. Senior Radiologist's Employment Agreement ("SREA") with defendant ROPA. (D.I. 1 at ¶ 15) The SREA governed, among other things,[1] the deferred benefit plaintiff would receive upon retirement, death or total disability.[2] (D.I. 12, ex. A) According to the SREA, plaintiff was entitled to receive deferred benefit in an amount equal to the average reported compensation paid to him within the three years preceding his retirement, death, or disability, payable over a three year period, provided the deferred benefit did not exceed thirty percent of ROPA's gross receipts for the year the deferred payments were made. (Id.) The SREA does not contain any administrative remedy provisions. (Id.)

On February 8, 2001, plaintiff and defendant ROPA entered

---

[1] The terms of plaintiff's employment with defendant ROPA also included plaintiff's compensation, health and benefits plans, the provision of medical liability insurance and rules governing patient files and records. (D.I. 12, ex. A)

[2] Paragraphs 5(c) and (d) of the SREA govern the deferred benefit.

2

into an agreement altering the deferred benefit terms of the SREA by executing the Amendment to Radiation Oncologists, P.A. Senior Radiologist's Employment Agreement (the "amended SREA"), which amended paragraphs 5(c) and (d) of the SREA. (Id., ex. B) The amended SREA increased the deferred benefit so that plaintiff received $1,200,000 in deferred benefits payable over a four year period following his retirement. (Id.)

On December 27, 2002, as a result of plaintiff's written notice of his retirement, defendant ROPA and plaintiff entered into a Deferred Compensation Agreement (the "DCA"). (D.I. 1 at ¶ 18) The DCA provides that ROPA agrees to pay plaintiff deferred benefits in the sum of $1,200,000 over four years, subject to noncompetition and other conditions enumerated in the SREA, the amended SREA and the DCA (collectively, these documents constitute, and are referred to, as the "Deferred Benefit Plan" or "the Plan"). (D.I. 12, ex. C)

Upon plaintiff's retirement on December 31, 2002, defendant ROPA made payments to plaintiff under the terms of the Deferred Benefit Plan for two years, totaling $600,000.[3] (D.I. 1 at ¶ 21) In a letter dated January 13, 2005, defendant ROPA sent notice to plaintiff that it was terminating all future payments under the

---

[3] For two years plaintiff received bi-monthly payments of $12,500 on the 15th of each month and the last day of each month for a total of $600,000. Plaintiff asserts that defendant ROPA owes plaintiff another two years of bi-monthly payments.

3

Plan. (Id. at ¶ 23) The letter further stated that plaintiff had the right to request administrative review of the decision to terminate the Plan payments. (D.I. 12, ex. D) The letter outlined a procedure whereby plaintiff was to file a written statement indicating why he believed the termination of the payments was incorrect and attend an administrative hearing where plaintiff would be permitted to submit written and oral evidence in support of his position. (Id.) Plaintiff did not pursue the administrative review set out in the letter and, instead, filed the current lawsuit.

### III. STANDARD OF REVIEW

Because the parties have referred to matters outside the pleadings, defendants' motion to dismiss shall be treated as a motion for summary judgment. See Fed. R. Civ. P. 12(b)(6). A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person

could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

IV. DISCUSSION

Defendants assert that plaintiff's State law claims of breach of contract, anticipatory repudiation, violation of the DWPCA and civil conspiracy are preempted by ERISA. Determining

whether state law claims are preempted by ERISA is a two part test. Pane v. RCA Corp., 667 F.Supp. 168, 170 (D.N.J. 1987) aff'g 868 F.2d 631 (3d Cir. 1989). First, the court must determine if defendants have an ERISA benefit plan. Id. If defendants do have such an employee benefit plan, the court must next analyze whether the state laws "relate to" this plan. Id.

### A.   ERISA Employee Benefit Plan

Defendants assert the Deferred Benefit Plan at issue constitutes a plan under ERISA. Plaintiff does not argue that the Deferred Benefit Plan is not an ERISA plan, but rather asserts that an evidentiary hearing is required before the court can determine whether the Plan is an ERISA plan. The court declines to conduct an evidentiary issue on the matter because the determination can be made on the record.

ERISA applies to "any employee benefit plan if it is established or maintained . . . by any employer engaged in commerce . . . ." 29 U.S.C. § 1003(a). ERISA defines an "employee benefit plan" as an "employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 28 U.S.C. § 1002(2)(B)(3). An "employee pension benefit plan" is broadly defined as:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as such a result of

>    surrounding circumstances such plan, or program -
>        (i) provides retirement income to employees, or
>        (ii) results in a deferral of income by employees
>        for periods extending to the termination of
>        covered employment or beyond[.]

Id. at (2)(A)(i)-(ii). "ERISA's coverage extends broadly to include all employee benefit plans." In re New Valley Corp., 89 F.3d 143, 148 (3d Cir. 1996). "Whether a plan exists within the meaning of ERISA is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person." Deibler v. United Food and Commercial Workers' Local Union 23, 973 F.2d 206, 209 (3d Cir. 1992) (internal citations omitted).

The Third Circuit has emphasized that the "crucial factor in determining whether a 'plan' has been established is whether [the employer has expressed an intention to provide benefits on a regular and long-term basis." Deibler, 973 F.2d at 209 (citing Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1077, 1083 (1st Cir. 1990)). The test for determining whether ERISA applies to an employee benefit plan is set out by the Third Circuit in Deibler. A plan, fund or program under ERISA is established if, "from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Id.

Defendants contend that the Deferred Benefit Plan identifies the intended benefits, the beneficiary, the procedures for the

7

receipt of benefits, the terms and the limitations of plaintiff's continued receipt of benefits and the source of financing. More specifically, the Plan states that its purpose is to "provide a deferred compensation benefit to the Employee upon his retirement." Thus, the benefits and the beneficiary are set out. The Plan also provides that defendant ROPA will pay the sum of $1,200,000, "payable without interest in ninety-six (96) bi-monthly installments of twelve thousand five hundred dollars ($12,500), with the first payment due as of January 15, 2003 and continuing on the last day and the 15th day of each month thereafter for four (4) years until December 31, 2006." The Plan includes a section titled "Limitations on Corporation's Obligations" where the conditions on which the payments will be made are described. The Deferred Benefit Plan, therefore, provides retirement income and a deferral of income to its beneficiaries and, thereby, qualifies as an "employee benefit plan." See 29 U.S.C. § 1002(2)(A)(i)-(ii); see also Modzelewski v. Resolution Trust Corp., 14 F.3d 1374, 1377 (9th Cir. 1994) (holding that aspects of a salary continuation agreement providing for deferred compensation to be paid upon certain triggering events (retirement, death or termination without cause), fell within ERISA's definition of a pension plan as a plan containing some provisions for retirement or deferred income).

8

Furthermore, plaintiff, in the complaint, asserts a claim under ERISA for failure to pay deferred compensation under the Deferred Benefits Plan. By claiming Plan benefits under ERISA, plaintiff has admitted that the Plan is an ERISA plan. See Pugh v. Metropolitan Life Ins. Co., 968 F.Supp. 178, 186 (D. Del. 1997) (concluding that plaintiff could not oppose preemption by arguing the plan does not qualify as an ERISA plan because plaintiff alleged elsewhere in the complaint that defendant violated the terms of ERISA in administration of the plan).

Plaintiff makes no argument on the merits as to why the Plan is not an ERISA plan and, therefore, fails to raise any genuine issues of material fact to avoid summary judgment, let alone demand an evidentiary hearing. The court finds no such evidentiary hearing is needed and, in light of the ERISA's broad coverage, concludes that the Plan is an ERISA plan.

### B. State Law Claims' Relation To The ERISA Plan

Congress' intent in enacting ERISA was to promote the interests of employees and their beneficiaries in employee benefit plans by "eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 99 (1983) (quoting 120 Cong. Rec. 29933 (1974)). Section 514 of ERISA, the "express preemption" provision reads:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of

> this chapter shall supersede any and all State laws
> insofar as they may now or hereafter **relate to** any
> employee benefit plan described in section 1003(a) of
> this title and not exempt under section 1003(b) of this
> title.

29 U.S.C. § 1144(a) (emphasis added). ERISA defines "State laws" as "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1).

The Supreme Court of the United States has stated that a law "'relates to' a covered employee benefit plan for purposes of the [preemption clause] 'if it has connection with or reference to such a plan.'" District of Columbia v. Greater Washington Bd. Of Trade, 506 U.S. 125, 129 (1992) (citations omitted). In the present action, the latter alternative can be ruled out, because the law at issue - that governing common law breach of contract, anticipatory repudiation, violation of the DWPCA and civil conspiracy claims - does not "refer" to an ERISA plan.

As to the former alternative, the Supreme Court has decided that attempting to define "connection with" is "unhelpful" and "frustrating," and that, accordingly, courts must "go beyond" the text and "look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656 (1995). The Court noted that it had found the purpose of § 514(a) to be

10

"'to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . ., [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.'" Id. (citing Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142 (1990)). The Court found that

> [t]his objective was described in the House of Representatives by a sponsor of the Act, Representative Dent, as being to "eliminat[e] the threat of conflicting and inconsistent State and local regulation." 120 Cong.Rec. 29197 (1974). Senator Williams made the same point, that "with the narrow exceptions specified in the bill, the substantive and enforcement provisions . . . are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans." Id., at 29933. The basic thrust of the pre-emption clause, then was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans.

Id. at 657.

ERISA preemption, accordingly, is not unlimited. "Some state actions may affect employee benefits in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." Shaw, 463 U.S. at 100 n.21. Further, "the absence of a direct nexus to [an] ERISA plan[ ]" will put a cause of action "beyond the scope of § 514 preemption." United Wire,

Metal and Mach. Health and Welfare Fund v. Morristown Memorial Hosp., 995 F.2d 1179, 1195 (3d Cir. 1993). In determining whether Congress intended that ERISA preempt a particular cause of action, courts have considered "the statute's express objectives, its structure, and its interpretation by the courts." Robinson v. Fikes of Alabama, Inc., 804 F.Supp. 277, 280 (M. D. Ala. 1992) (citing FMC Corp. v. Holliday, 498 U.S. 52, 57 (1990)). "[A]n overarching consideration in the determination is that the preemption provision must be given a 'common-sense' effect." Id. (citing Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 740 (1985)). A State law cause of action is expressly preempted by ERISA where a plaintiff, in order to prevail, must prove the existence of, or specific terms of, an ERISA plan. Ingersoll-Rand, 498 U.S. at 139.

Plaintiff raises no genuine issues of material fact regarding the preemption of the breach of contract claim, the anticipatory repudiation claim and the violation of the DWPCA claim.[4] The breach of contract claim is based on defendant ROPA's ceasing to make "the contractually required deferred compensation payments." The anticipatory repudiation claim is based on defendant ROPA's repudiation of the amended SREA and DCA by the January 13th letter stating defendant ROPA's intention "to

---

[4]Plaintiff does not raise an argument against preemption, other than that the Plan is not an ERISA plan.

12

cease to make the required deferred compensation payments." The violation of the DWPCA is based on defendant ROPA's "failure to make the deferred compensation payments." The court concludes these three claims are all preempted by ERISA because they "relate to" the ERISA plan. See Pane, 868 F.2d at 635 (holding a breach of contract claim preempted by ERISA); Pugh, 968 F.Supp. 178 (holding that a claim under the Delaware Wage Payment and Collection Act, predicated on alleged violations of an employee benefit plan, is preempted by ERISA).

The civil conspiracy claim asserts that defendant doctors "together engaged in a course of conduct that unlawfully deprived [plaintiff] of the benefits due to him pursuant to the amended SREA and the DCA." This claim "relates to" the ERISA plan because violation of the ERISA plan is the unlawful conduct the defendant doctors allegedly conspired to perform. Without a determination of whether withholding the benefits under the Plan was unlawful, the claim fails. Allowing the claim would "undercut the goal of uniform national regulation in the manner that section 514(a) seeks to prevent." Christopher v. Mobile Oil Corp., 950 F.2d 1209, 1219 (5th Cir. 1992) (finding State law civil conspiracy claim, when related to an ERISA plan, preempted by ERISA).

Plaintiff asserts that the civil conspiracy count should not be dismissed as preempted because it names the defendant doctors,

who are not eligible defendants under ERISA. The Third Circuit has warned that "district court[s] should not easily fashion additional ERISA claims and parties outside congressional intent under the guise of federal common law." Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 235 (3d Cir. 1994). "Artful characterization of the action [does] not change the fact that plaintiffs' claims were based [on an ERISA violation]" and, therefore, are preempted. Huss v. Green Spring Health Servs., Inc., 18 F.Supp. 2d 400, 404 (D. Del. 1998) (citing Kuhl v. Lincoln Nat'l Health Plan of Kansas City, Inc., 999 F.2d 298, 303-04 (8th Cir. 1993) The express preemption provision is "deliberately expansive, and designed to establish [employee benefit] plan regulation as exclusively a federal concern." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987).

Allowing the civil conspiracy claim merely because the defendant doctors are named would allow plaintiff to circumvent the preemption provision of ERISA and threaten the objective of ERISA to provide uniform regulation of employee benefit plans. See Shaw, 463 U.S. at 90 (noting that Congress' goal with the preemption provision was "ensuring that employers would not face conflicting or inconsistent state and local regulation of employee benefit plans"). Similarly, plaintiff's argument that the claim should not be preempted because punitive damages were requested fails. "That ERISA does not provide the full range of

14

remedies available under state law in no way undermines ERISA preemption." Tolton v. Am. Biodyne, 48 F.3d 937, 943 (6th Cir. 1985). As this court has stated previously,

> [t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly. 481 U.S. at 54, 107 S.Ct. 1549 (internal quotations omitted).

Huss, 18 F.Supp. 2d at 408 (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987)). The civil conspiracy claim is preempted by ERISA.

### C. Exhaustion Of Administrative Remedies

Defendants contend that plaintiff's ERISA claim must be dismissed for failure to exhaust administrative remedies prior to filing suit. Section 1133(2) states that every employee benefit plan shall "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(3). "Under ERISA, internal administrative remedies . . . must be exhausted prior to bringing suit in federal court." Kilkenny v. Long, 288 F.3d 116, 122-23 (3d Cir. 2002). "Thus, exhaustion in the context of ERISA requires only those administrative appeals provided for in the

relevant plan or policy." Kennedy v. Empire Blue Cross and Blue Shield, 989 F.2d 588 (2d Cir. 1993). An exception to the exhaustion requirement is recognized when exhaustion of the administrative remedies would be futile. See Harrow v. Prudential Ins. Co. Of America, 279 F.3d 244, 249 (3d Cir. 2002) ("A plaintiff is excused from exhausting administrative procedures under ERISA if it would be futile to do so."). Plaintiff contends that, because the Plan did not contain any administrative remedies, exhaustion would be futile and, therefore, the ERISA claim should not be dismissed.

It is uncontested that the Deferred Benefit Plan does not contain an administrative remedy provision. The Third Circuit has held that, when there are no administrative remedies under a severance policy, it would be futile to require employees to exhaust their administrative remedies before seeking judicial review. Berger v. Edgewater Steel Co., 911 F.2d 911, 916 n.4 (3d Cir. 1990) ("In addition, there were no administrative remedies under the severance pay policy . . . Thus, they could not exhaust their administrative remedies prior to seeking judicial relief on their other claims related to those benefits.").

The letter received by plaintiff giving him notice that the payments would cease contained a description of administrative remedies. Defendants argue that, for this reason, the letter

16

constituted sufficient notice as to require plaintiff to exhaust those remedies prior to filing suit. However, defendants have not shown that the procedures described in the letter were meaningful administrative remedies. The court finds that plaintiff has raised a genuine issue of material fact sufficient to survive the summary judgment motion.

V.   **CONCLUSION**

For the reasons stated herein, defendants' motion for summary judgment is granted in part and denied in part. An order consistent with this memorandum opinion shall issue.