IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD C. TILTON, D.O., | : |
| Plaintiff, | : |
| v. | : Civil Action No. 05-00251 (SLR) |
| RADIATION ONCOLOGISTS, P.A., | : |
| Defendant. | : |

## MOTION TO QUASH SUBPOENA DUCES TECUM

Pursuant to Rule 45(c)(3) of the Federal Rules of Civil Procedure (the "Federal Rules"), Radiation Oncologists, P.A., ("ROPA"), by and through its undersigned counsel, hereby moves the Court to quash the subpoena duces tecum issued to William J. Martin, III, Esquire, as the requested documents are protected by ROPA's attorney-client and work-product privileges.

## PRELIMINARY STATEMENT

The Court should quash the subpoena duces tecum (the "Subpoena") directed to William J. Martin, III, Esquire ("Mr. Martin"). Mr. Martin was formerly counsel for ROPA and Plaintiff is attempting to use the Subpoena to obtain materials from Mr. Martin that are protected by ROPA's attorney-client and work-product privileges. Any documents protected by ROPA's privileges and in the possession of Mr. Martin may only be produced upon ROPA's decision to waive the privileges. Plaintiff's status as a former shareholder or officer of ROPA does not enable him to waive the attorney-client or work-product privileges on ROPA's behalf and, therefore, the Court must quash the Subpoena.

## BACKGROUND

Plaintiff was an employee of ROPA from approximately ROPA's incorporation until Plaintiff's retirement in December 31, 2002. During his employment with ROPA, Plaintiff became a shareholder of ROPA and, at one time, acted as ROPA's president.

During some of this period, Mr. Martin served as counsel to ROPA. Mr. Martin did not, however, separately, or jointly with ROPA, act as counsel to Plaintiff. In the course of his representation of ROPA, Mr. Martin created numerous confidential documents and sent and received numerous confidential communications related to the creation of a deferred compensation plan for ROPA's shareholders, including Plaintiff (the "Deferred Compensation Plan").

In his position as president and shareholder of ROPA, Plaintiff, shortly before his retirement, caused ROPA to significantly increase the deferred compensation payments he was to receive upon his retirement. This change in the deferred compensation payments caused significant injury to the Deferred Compensation Plan and to ROPA. As a result, on or about January 13, 2005, ROPA notified Plaintiff that it was terminating any remaining deferred compensation payments to Plaintiff.

On or about April 28, 2005, Plaintiff filed the Complaint in the above-captioned proceeding, alleging that ROPA was liable to him for the termination of his deferred compensation payments under various theories of recovery, including breach of contract, violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., anticipatory repudiation, violation of the Delaware wage payment and collection act, and civil conspiracy. (D.I. 1.)

On June 3, 2005, Defendant filed a motion to dismiss the Complaint. (D.I. 10.) On January 18, 2006, the Court, by Memorandum Opinion and Order, granted Defendant's motion to dismiss in large part, denying the motion to dismiss only as to Plaintiff's ERISA claim. (D.I. 19, 20.)

On February 28, 2006, Plaintiff issued the Subpoena on Mr. Martin. The Subpoena requests: "All client files in your possession, custody or control involving [ROPA], with reference to providing and/or developing any deferred compensation agreement or plan to any member, officer, director of ROPA or Doctor who works at ROPA." As is clear from the Subpoena, many of these documents were created or received pursuant to Mr. Martin's role as counsel to ROPA and contain confidential information that is protected by the attorney-client privilege.

## BASIS FOR RELIEF REQUESTED

Rule 45 of the Federal Rules provides, in pertinent part, that: "On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii). Because the Subpoena seeks the disclosure of ROPA's privileged documents and communications, the Court must quash the Subpoena as ROPA has not waived its attorney-client or work-product privileges.

A. ROPA has Standing to Quash the Subpoena

As a threshold matter, ROPA notes that it has standing to challenge the Subpoena. Although a party ordinarily does not have standing to object to discovery sought from a non-party, a well established exception exists for third-parties that have a personal right or privilege

3

with regard to the subpoenaed materials. See In re Grand Jury, 111 F.3d 1066, 1073-74 (3d Cir. 1997); Transcor, Inc. v. Furney Charters, Inc., 212 F.R.D. 588, 590-91 (D. Kan. 2003)(citation omitted); Davis v. Gen'l Accident Ins. Co. of Am., No. Civ. A. 98-4736, 1999 WL 228944 (E.D. Pa. April 15, 1999); Snierson v. Chemical Bank, 108 F.R.D. 159, 160 n.2 (D. Del. 1985)(quoting Dart Indus., Inc. v. Liquid Nitrogen Proc. Corp. of Cal., 50 F.R.D. 286, 291 (D. Del. 1970)); Wright & Miller, 8 Fed. Practice & Procedure § 2459 (Rev. 2005). Here, ROPA filed the instant Motion because the Subpoena seeks documents protected by its attorney-client and work-product privileges. Thus, it is beyond dispute that ROPA has standing to challenge the Subpoena.

    B.    Plaintiff May Not Waive the Attorney-Client Privilege on ROPA's Behalf

The attorney-client privilege is one of the oldest privileges known in common law. Upjohn Co. v. United States, 449 U.S. 383, 388 (1981)(citing 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961)). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Id. Indeed, the purpose of the privilege is to encourage clients to make full and complete disclosures to their counsel. Id. (citing Fisher v. United States, 425 U.S. 391, 403 (1976)). The attorney-client privilege applies to corporations as well as individuals. See e.g., id. at 390; Wright & Miller, 8 Fed. Practice & Procedure § 2017 (Rev. 2005). In the instant case, if the Court were to require Mr. Martin to comply with the Subpoena it would violate the bedrock principle that companies' confidential communications with their counsel will remain protected from disclosure to the outside world.

All confidential communications regarding the Deferred Compensation Plan between ROPA, its then management (which may have included Plaintiff), and Mr. Martin, that

4

were made to facilitate the rendition of legal services, are protected by the attorney-client privilege – a privilege which ROPA alone controls. See Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 349 (1985); Dexia Credit Local v. Rogan, 231 F.R.D. 268, 277 (N.D. Ill. 2004). The United States Supreme Court has recognized the principle that only an organization's current management has the power to assert or waive the attorney-client privilege on the entity's behalf. Weintraub, 471 U.S. at 349; see also Interfaith Housing Delaware, Inc. v. Town of Georgetown, 841 F. Supp. 1393, 1399 (D. Del. 1994). Past managers, once control has passed to new management, lose the authority to assert or waive privilege on behalf of the organization. Weintraub. 471 U.S. at 349 ("[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well. . . . Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties."). Under Weintraub, Plaintiff, as a past shareholder and officer of ROPA, has no power to compel ROPA to produce privileged documents. Weintraub, 471 U.S. at 349. Accordingly, pursuant to the plain language of Rule 45 of the Federal Rules, the Court must quash the Subpoena to the extent it seeks materials protected by ROPA's attorney-client privilege. See Fed. R. Civ. P. 45(c)(3)(A)(iii).

It is also important to note that Mr. Martin's representation was only as counsel to ROPA; he did not act as counsel for Plaintiff. In certain circumstances, such as where two parties are represented by the same attorney in the furtherance of a common interest, courts have required the production of documents when the parties' interests subsequently become adverse. See North River Ins. Co. v. Philadephia Reins. Corp., 797 F. Supp. 363, 367 (D.N.J. 1993); McCormick on Evid., § 91 (5th ed. rev. 2003). In these situations, courts do not permit the

5

parties to assert the privilege against one another. North River, 797 F. Supp. at 367; McCormick at § 91.

This is not, however, the situation in the instant proceeding. Mr. Martin *never* jointly represented Plaintiff and ROPA. To the contrary, this case presents material facts analogous to those in Breckenridge v. Bristol-Myers Co., 624 F. Supp. 79 (S.D. Ind. 1985), where the court denied a plaintiff's request for documents that he had access to while he was employed as general counsel for the defendant. In Breckenridge, the plaintiff removed defendant's files, some of which were protected by the attorney-client privilege, when he left defendant's employ. In the course of plaintiff's subsequent lawsuit against defendant, the court held that the plaintiff was not entitled to retain the documents that were protected by defendant's privilege. Id. at 83. The Breckenridge court held that "the contents [of the removed file] remain a matter of confidence between the defendants and their counsel. *Access to those documents by an aggrieved employee . . . does not grant him license to collect . . . their contents because he believes it helpful to his cause of action.*" Id. (emphasis added); see also Dexia, 231 F.R.D. at 278 ("[T]he question presented is whether there is any legal basis to permit a former control group member to invade the corporate privilege, when he or she no longer is a member of the control group and has no personal claim of privilege in the documents at issue. We believe the answer to that question is no.").

Here, as in Breckenridge, the fact that Plaintiff may have had access to the documents requested in the Subpoena while employed by ROPA is irrelevant to his right to obtain those documents to further the instant lawsuit. See also Dexia Credit, 231 F.R.D. at 277-78. ROPA is the sole holder of privilege with respect to those documents and until such time as

it chooses to waive the privilege, Plaintiff is not entitled to their production. See Weintraub, 471 U.S. at 349.

    C.    The Subpoena Must be Quashed Because it Seeks Materials Protected by ROPA's Work-Product Privilege

The Court must also quash the Subpoena to the extent its seeks documents protected by ROPA's work-product privilege. Just as the attorney-client privilege is held by an association or corporation and not its agents (or former agents), the work-product privilege is also held by the entity. See Dexia, 231 F.R.D. at 278-79 ("[W]hen a corporation seeks to withhold privileged material from [a] former control group member, it is not depriving the 'client' of information. Rather, the corporation is preserving the corporation's privilege by refusing to share privileged information with a former control group member, who no longer has any legal right to it").

Mr. Martin's client, as detailed above, was ROPA and not Plaintiff. Thus, the work-product privilege, and the authority to waive it, rests solely with ROPA and its current management. Id. Because Plaintiff is no longer part of ROPA's management, he has no ability to waive the work-product privilege on ROPA's behalf. Id. For these reasons, the Court must quash the Subpoena to the extent it seeks documents protected by ROPA's work-product privilege.

## CONCLUSION

In sum, for the foregoing reasons, ROPA respectfully requests that the Court quash the Subpoena as it seeks the production of documents protected by ROPA's attorney-client and work-product privileges.

7

## WAIVER OF RIGHT TO FILE BRIEF IN SUPPORT

In light of the nature of the relief requested, and because this Motion raises no novel issues of law, ROPA hereby waives its right to file a brief in support of this Motion as provided by D. Del. L.R. 7.1.2, except that ROPA reserves all rights to file a reply brief in response to any opposition to this Motion.

WHEREFORE, ROPA respectfully requests the entry of an order quashing the Subpoena.

Dated: March 14, 2006
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ William H. Sudell
William H. Sudell, Jr. (#463)
Curtis S. Miller (#4583)
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

Attorneys for Defendant Radiation Oncologists, P.A.

509877

## RULE 7.1.1 CERTIFICATE

I hereby certify that counsel for Radiation Oncologists, P.A. has made a reasonable effort to reach agreement with counsel for the Plaintiff concerning the subject matter of the motion but that such efforts have, to date, been unsuccessful. The parties are continuing, however, to work toward a consensual resolution of the disputes raised in the subject motion and will advise the Court if they are able to reach a resolution.

_____
Curtis S. Miller (No. 4583)

March 14, 2006

510832